# SEATON et al. v. DYE et al.—263 S. W. (2d) 544.

Eastern Section.  January 8, 1953.

Petition for Certiorari denied by Supreme Court, June 5, 1953.

324

Fowler, Long & Fowler, and Wilbur W. Piper, all of Knoxville, for appellants.

Clyde W. Key, of Knoxville, for appellees.

HOWARD, J.   The original bill in this cause was filed in the Chancery Court of Knox County on October 26, 1942 by W. P. Seaton against S. F. Dye, C. W. Jack, Fred

S. Price, C. L. Rhodes and others. It alleges that complainant is the owner of a matured note for $6,000, executed by the above named defendants to Cumberland College, and secured by mortgage trust deed upon described property in Knox County referred to in this record as the Beaman Lake Tract.

It prays judgment against the named defendants and sale of the mortgaged property.

On January 26, 1943, the named defendants, except Fred S. Price, filed answer, pleading that foreclosure of the mortgage should be stayed under the Soldiers and Sailors' Civil Relief Act of Congress, 50 U.S.C.A. Appendix, Sec. 501 et seq., because Fred S. Price, one of the defendants, was in the armed service of the United States.

On June 24, 1943 R. W. Brown, by leave of Court, filed his intervening petition in the cause, alleging that he was owner of a matured note for $7,794.33, executed to him by the above named defendants, and secured by a second deed of trust upon the same property securing the note held by complainant W. P. Seaton.

This petition prayed for process against the above named defendants for judgment against them, and foreclosure and sale of the property.

It does not appear that process on this intervening petition was issued or served on defendants.

On July 2, 1943 decree was entered in the cause granting recovery against the named defendants in favor of W. P. Seaton for the balance due on his note, and in favor of R. W. Brown for the balance due on his note, and ordering sale of the property for payment of said decrees.

Sale by a Special Commissioner was made, and confirmed, on August 31, 1943, at the price of $10,000, which was applied first, to the satisfaction of the decree in favor of W. P. Seaton, next to the cost of the cause, and balance

of $2,282.05 was applied on the indebtedness of R. W. Brown.

On September 16, 1943, S. F. Dye, C. W. Jack and C. L. Rhodes jointly with their wives filed answer to the intervening petition of R. W. Brown, admitting the execution of the note to R. W. Brown and trust deed securing same and balance unpaid thereon, as alleged in his petition.

In the defendant's answer it was averred that because defendant Fred S. Price is in the armed service of the United States, no deficiency judgment could be entered against him under the Soldiers and Sailors Relief Act of Congress.

It was further averred that the purported decree entered against defendants was not a final decree because no process was served on any of the defendants to the intervening petition; that R. W. Brown "accepted the second mortgage upon said real estate as security for a balance due him on the purchase price thereof, and should be forced and required to look to said real estate solely for any sum due him" as a matter of public policy.

It was further averred that the purchase of the property by defendants was induced by representations made by R. W. Brown that a colored amusement park was to be established on the premises, and that he had wide and varied contacts with leaders of the colored race, etc., which was a material part of the "arrangement and agreement between your defendants and the intervening petitioner" and "but for said agreement and representations on the part of the intervening petitioner, your defendants never would have entered into the agreement to purchase said real estate."

It was then alleged "the intervening petitioner failed and refused to secure the proper funds and means from the members of the colored race in this vicinity with which

to improve and to develop said real estate as he had promised and agreed to do, and which was a part of the contract existing between the parties.''

It was further averred that ''the great war'' arose soon afterward which prevented defendants from buying necessary building material for the amusement park, which was the purpose of the purchase of the property, and since the purpose had become ''illegal as a result of the war'' defendants are not liable for any deficiency.

It was further averred that the County Planning Commission of Knox County had refused to permit the property to be developed for ''the purposes aforesaid.''

It was further averred that prior to the sale of the property to defendants by the petitioner, he had been permanently enjoined ''from selling or disposing of the said real estate in any manner whatsoever'', which injunction was in full force and effect when the sale was made, but not known to defendants until about a year ago, which would be September 1942, and that petitioner is in Court with ''unclean hands'' and should be repelled from recovering a deficiency judgment for that reason.

An amendment to this answer was filed on February 28, 1944, averring that as part of their contract to purchase said real estate petitioner agreed that in event the Amusement Park could not be established or for any other reason defendants desired him to do so, he would take the property off their hands and save them harmless in any event, which was a material inducement to the contract of purchase.

Motion was made to strike parts of the answer as amended, which was overruled.

On March 16, 1946, R. W. Brown, petitioner, was allowed to file an amended petition to show that defendant, Fred S. Price, had been discharged from the Army, and

to credit the amount sued for by the $2,282.05 received from sale of the property, and pray for a deficiency judgment of $5,995.47 against defendants.

On May 8, 1946 defendant Fred S. Price filed his answer to the intervening petition, adopting the answer of his co-defendants, and specially pleading that the conveyance to him and co-defendants was made by R. W. Brown in violation of an injunction granted by order of the Chancery Court of Roane County, Tennessee, on December 7, 1939, in cause styled Hazel Hagler McCurdy v. R. W. Brown, reading as follows:

"Upon application of the complainants in their bill and at bar, the defendants are hereby enjoined from in any manner disposing of, selling or encumbering any of the assets of the estate of T. L. Brown, deceased, particularly the Beaman Lake property near Knoxville in Knox County, Tennessee, pending further order of this Court."

On June 22, 1946, R. W. Brown gave his deposition in the cause, filing the note for $7,794.33, signed by defendants, with payments credited between January 15 and March 31, 1942, amounting to $1058, and a further credit of $2,282.05 as proceeds from sale of the property. Brown testified that the claims sued for in the Roane County case had all been paid, and that suit dismissed and filed a certified copy of order entered in that cause on April 24, 1946, showing satisfaction in full of the judgment. Brown also filed as exhibit to his deposition copy of sale contract entered into on September 5, 1941, between him as seller and S. F. Dye, C. L. Rhodes, Chas. Jack, and Fred S. Price as purchasers, by which he agreed to sell and purchasers agreed to buy real estate "situated in 2 Civil District of Knox County, Tennessee, known as Beaman Lake property, consisting of 117 acres more or

less" at the price of $13,500, payable $6,000 cash and $7,500 on time, subject to Wallace & Wallace obtaining a loan of $6,000 thereon.

The deed of R. W. Brown and wife, executed pursuant to that contract, was dated September 6, 1941, acknowledged before a Notary Public on that date, and received for record by the register of Knox County on September 10, 1941.

There were also filed six notes signed by the four defendants payable to Cumberland College for $1,000.00 each, due one each year for six years, but providing that a failure to pay either note when due will make all remaining notes due at the option of the payee.

The four defendants also executed a second mortgage deed, conveying the Beaman Lake property to a trustee to secure the note of $7,794.33 to R. W. Brown, payable $1,000 January 15, 1942, $1,000 June 15, 1942, and remainder September 15, 1942, with interest from date, and ten per cent attorney's fees if placed in the hands of an attorney for collection. This deed further provides for the payment of taxes on the property and insurance on buildings by the makers for the protection of the beneficiary, and for sale by the trustee if any obligation is in default. The deed was acknowledged by the makers before a Notary Public on September 9, 1941, and recorded in the Register's Office of Knox County on October 24, 1941.

Defendants S. F. Dye, Fred Price and C. L. Rhodes gave their depositions on September 17, 1951. Each testified that the purchase of the property was made by them under an agreement with R. W. Brown that if and when the property was sold the mortgage to Cumberland College should first be paid. Next the note to R. W. Brown and "all profits in addition to that would be divided be-

tween us four purchasers and Mr. Brown, each receiving one-fifth thereof, and in no event would Mr. Brown seek a deficiency'' against either of the purchasers.

That testimony was excepted to as contradicting and varying the terms of the sale contract, note and mortgage deed executed by the deponents, which exceptions the Chancellor sustained.

Defendant C. W. Jack did not testify.

Petitioner R. W. Brown testified, in rebuttal, subject to his exceptions denying that any agreement was made as testified to by these witnesses.

On June 25, 1952, the defendants amended their answer to the intervening petition in which they averred that the property was purchased under an oral agreement that in the event of a foreclosure sale the proceeds of the sale were to be applied as follows: (1) on the mortgage note held by Cumberland College; (2) on the note held by Brown, and (3) that in the event the sale did not satisfy both notes, Brown agreed not to seek a deficiency judgment against them.

Upon the hearing the Chancellor sustained the defendants' plea of ''unclean hands'' and dismissed the intervening petition. From the Chancellor's decree, Brown has perfected this appeal. The Chancellor made a written finding of facts, a portion of which reads as follows:

''That at the time of the execution and delivery by the said R. W. Brown of the aforesaid warranty deed, and at the time of the execution and delivery by said defendants of their said promissory note and deed of trust, it was expressly understood and agreed by and between the said R. W. Brown and said defendants as a part and parcel of said transaction, that thereafter the said R. W. Brown and said defendants would cooperate with each other in their efforts to

negotiate a sale of said Beaman Lake property to other persons; that in the event the parties were successful in negotiating a sale thereof at a price more than sufficient to pay a first mortgage indebtedness of $6,000 which said defendants procured from Cumberland College simultaneously with said transaction, together with said second mortgage note of $7,794.33, the surplus over and above said two indebtednesses would be divided between the parties five ways, viz.: the petitioner R. W. Brown would receive one-fifth of such surplus, and each of said defendants would receive one-fifth of such surplus. It was further a part of said agreement and understanding that if the parties were not able to negotiate a sale of said property for an amount sufficient to pay in full both said two mortgage indebtednesses, then in such event the petitioner R. W. Brown would not seek or be entitled to hold the defendants, or any of them, for any deficiency on said second mortgage indebtedness.''

After making the foregoing finding of facts, the Chancellor decreed that the parol evidence of the three defendants supporting said finding was not admissible and excluded same.

The Chancellor then decreed that R. W. Brown conveyed the property to defendants in violation of the injunctive order of the Chancery Court of Roane County, Tennessee, in the case of Hazel Hagler McCurdy v. R. W. Brown, et al., and ''does not come into this, a Court of equity, with clean hands and that he must be repelled on that account.''

Both appellant and appellees have assigned errors.

We consider first the errors assigned by appellees to the action of the Chancellor in excluding the parol con-

temporaneous testimony of defendants. In support of their assignments, it is argued on behalf of appellees that the testimony excluded was admissible under one or more of the following three rules of evidence, to-wit:

(a) that parol proof is admissible to show that a deed conveying property was delivered on conditions not stated therein;

(b) that parol proof is admissible to show that the entire contract in suit between the parties was not stated in the writing and to show the parts omitted;

(c) that title to land may be shown by parol proof to be held in trust for a third person, notwithstanding the deed conveying the land may be absolute on its face.

As an abstract question of law, these rules of evidence may be admitted to be correct in a case to which they apply, but they do not apply to the instant case.

The rule stated in paragraph (a) could not apply here, because it is not claimed either in the pleadings or proof that the deed from R. W. Brown to defendant appellees was delivered and to take effect on condition of any kind. On the contrary, the delivery was absolute, and appellees at once borrowed from Cumberland College $6,000 and executed a mortgage trust deed on the property conveyed to them by this deed to secure the loan.

In Hines v. Willcox, 96 Tenn. 148, 33 S. W. 914, 915, 34 L. R. A. 824, 832, the Court held that the rule stated in paragraph (b) above only applied ''in cases where the parol evidence in no way contradicts or alters the terms of the written contract, but tends to establish an independent or collateral agreement not in conflict with it.''

The above holding is quoted and followed by this Court (Western Section) in Weeks v. Dealers' Implement Co. Inc., 16 Tenn. App. 599, 65 S. W. (2d) 585.

■ The note sued on here is an unconditional promise to pay a sum certain at specified future dates, and the parol proof offered seeks to contradict and vary the terms of the note by attaching a condition to the promise to pay the note.

■ The contract of sale signed by the parties and in performance of which this note was executed is an unconditional promise to pay $13,500 as consideration for the property. The parol proof offered seeks to impose a condition on the obligation of that written contract.

■ Hence, rule (b) stated above cannot apply in this case.

Under the rule stated in paragraph (c) above, a trust may be impressed upon real estate by parol proof which is "clear, cogent, convincing and irrefragable," Fuchs v. Fuchs, 2 Tenn. App. 133; Moore v. Crawford, 130 U. S. 122, 9 S. Ct. 447, 32 L. Ed. 878, and which does not contradict the terms of the deed, Mee v. Mee, 113 Tenn. 453, 82 S. W. 830, or a valid written instrument relating to the character of title conveyed by the deed. Caprum v. Bransford Realty Co., 4 Tenn. App. 237; State for Use of Burrow v. Cothron, 21 Tenn. App. 519, 113 S. W. (2d) 81.

In the instant case, the excluded testimony does not seek to impress a trust upon the real estate conveyed. Admittedly, the real estate had been sold by decree of the Court and its proceeds properly applied before the issues herein arose. It was the deficiency in payment of the note for $7,794.33, which was left by the sale of the real estate, which created the controversy now being waged.

The defense sought to be established by the excluded testimony was the contract alleged to have been made by R. W. Brown at the time the note sued on was executed

that he would not seek to hold appellees personally liable on the note.

Parol proof of such agreement would clearly contradict the terms and obligations of the note sued on and would be inadmissible. For these reasons we hold that the Chancellor did not err in sustaining exceptions and excluding the testimony of the three appellees, and their assignments of error are overruled.

We now consider assignments of error by appellant R. W. Brown.

Appellant's first and third assignments charge error in overruling motion to strike parts of the answer and amendments thereto on grounds that same are (1) insufficient in law, (2) inconsistent defenses, and (3) filed too late.

■ These assignments must be overruled. The parts of the answer and amendments sought to be stricken are not so inconsistent as to be repugnant to defenses previously plead.

■■ The fact that appellees waited nine years after filing their original answer, and until the hearing to file their amendment, for the first time pleading that the whole enterprise was a joint venture, and that no liability beyond the value of the property involved was to be incurred, goes to the weight and credibility of the testimony offered in support, but is not ground for denying the right to file the amendment. Amendments to make pleadings conform to the proof may be allowed at the final hearing, in furtherance of justice. Gibson's Suits in Chancery, Sec. 434.

Appellant's second assignment charges that the Chancellor erred in making a finding of fact from the testimony which he excluded. Since we hold that such testimony

was properly excluded, ruling upon this assignment is unnecessary.

Appellant's fourth, fifth and sixth assignments charge that the Chancellor erred in holding that appellant was in Court with "unclean hands" because he found that the land for which the note sued on was given, was conveyed to appellees in violation of an injunction of the Chancery Court of Roane County, Tennessee, and in dismissing his intervening petition on that ground.

The injunction on which the Chancellor based his decree was awarded by the Chancellor of Roane County on December 7, 1939, in a cause styled Hazel Hagler McCurdy et al. v. R. W. Brown, et al., in a Chambers decree pronounced at Clinton, Tennessee, on December 1, 1939, and entered of record on December 7, 1939.

Appellant testified that he was not present in Court, and did not have actual knowledge that the decree enjoined the sale of this land. However, the decree was approved by his attorney and he is chargeable with knowledge of its contents.

It appears that the judgment was later paid and an order entered on April 24, 1946, approving the settlement and taxation of costs. Inasmuch as the injunction was awarded to insure the collection of the judgment, this order had the effect of dissolving the injunction if same had remained in effect until that time.

It is further insisted for appellant that the sale of the property by R. W. Brown as an individual would not violate the injunction against him and Charles Roberts as executors of the estate of T. L. Brown, if it were in effect. It is true that a person acting as an individual and the same person acting as executor or in a trust capacity are different persons in law. It is also true that an injunction is binding not only on the de-

fendant named therein, but also upon his solicitors, attorneys, agents and servants. Gibson's Suits in Chancery, Sec. 846. Hence, this injunction was binding upon R. W. Brown as an individual as well as executor.

While the executors of the will of T. L. Brown did not make the sale and did not violate the injunction, R. W. Brown, as an individual and devisee under the will of which he was one of the executors, did make the sale, and if that sale hindered or defeated the collection of the judgment which the injunction was issued to protect, we would hold that he violated the injunction.

The decree was entered of record in the Chancery Court of Roane County on December 7, 1939, and no certified copy of same was recorded in the Register's Office of Knox County, as required by Code, Sec. 8044. Hence, the judgment was not a lien on the Beaman Lake property in Knox County. The injunction operated against the judgment debtors personally, but did not fix a lien on the property involved.

Appellees testify that they had no knowledge of the decree or the injunction when they purchased this property in 1941, and hence their title was in no way affected by the judgment or the injunction. Furthermore, it cannot be said that the violation of the injunction was "a wrong committed in reference to this particular transaction."

In Overton v. Lewis, 152 Tenn. 500, 279 S. W. 801, 804, the Supreme Court held that a wrong to bar a complainant under the principle of "unclean hands" "must bear an immediate relation to the subject-matter of the suit, and in some measure affect the equitable relations subsisting between the parties to the litigation and arising out of the transaction". This ruling is supported by the many cases cited in 4 A. L. R. 45-107. Moreover,

appellees were not affected or in any manner injured by the violation of the injunction.

It results that in our opinion the Chancellor erred in dismissing the intervening petition of R. W. Brown on the ground that he was in Court with unclean hands. Accordingly the decree of the Chancellor will be reversed and a decree will be entered in this Court in favor of R. W. Brown against the defendants C. W. Jack, Fred Price, C. L. Rhodes and S. F. Dye, for $4,683.23, the balance owing on the note, with interest thereon as provided in said note, together with ten per cent attorney's fee and cost of the cause.

The note sued on provides for ''reasonable attorney's fees,'' and the trust deed securing this note signed by appellees provides ''that if default is made in the payment of principal or interest and it is placed in the hands of an attorney at law for collection, ten per cent attorney's fee will be added thereto.''

Reversed, for reasons indicated.

McAmis, P. J., and Hale, J., concur.