Virginia L. COOK, as next friend and guardian of her son, James Perry Cook, a minor, Petitioner-Respondent,

v.

Gayle Franklin COOK et al., Petitioners-Respondents.

Supreme Court of Tennessee.

March 10, 1975.

Barret Ashley, Ralph I. Lawson, Ashley, Ashley & Lawson, Dyersburg, for Virginia L. Cook.

James M. Glasgow, Elam, Glasgow, Tanner & Acree, Union City, for Gayle Franklin Cook.

Robert Walker, Heiskell, Donelson, Adams, Williams & Kirsch, Memphis, for Lincoln American Life Ins. Co. and Larry Page.

## OPINION

HENRY, Justice.

Essentially this is a suit in equity seeking to impress a trust upon the proceeds of a policy of life insurance.

### I.

Virginia L. Taylor and James Milton Cook were married in 1956. Mrs. Cook had two children by a prior marriage; Mr. Cook had none. One child, James Perry Cook, was born of this marriage, and at the time of the institution of the suit, he was nine years of age.

In 1967 James Milton Cook applied for and was issued a fifteen year decreasing term policy of life insurance, in the initial amount of one hundred thousand ($100,000) dollars, written by Lincoln American Life Insurance Company. Virginia Taylor Cook was designated as beneficiary. James Perry Cook, son of James Milton Cook, and his two stepsons, were designated as contingent beneficiaries "to share equally or to the survivor."

The Cooks encountered domestic difficulties and sometime during the year 1971 divorce proceedings were instituted. On April 19, 1971, as a result of their differ-

ences, James Milton Cook changed the beneficiary under the life insurance policy. To accomplish this he completed an Application for Change in Policy, indicating a change as follows:

Primary
beneficiary to: Gayle F. Cook (Brother) (Executor)

This requested change was approved and on April 30, 1971, an endorsement was placed upon the policy reading as follows:

Beneficiary is changed to read:
Gayle F. Cook, Brother.

The policy thus endorsed was returned to and accepted by James Milton Cook.

It should be noted that the record does not reflect whether Mr. Cook had a will at that time.

On February 15, 1972 a divorce decree was entered. Three days later, on February 18, 1972, James Milton Cook wrote a holographic will, in which he named his brother, Gayle Franklin Cook, as executor and under which he gave his entire estate to his son, James Perry Cook. Gayle Franklin Cook was also appointed guardian of the person of James Perry Cook; however, the record reflects that he has not qualified in this capacity.

Two features of this holograph are worthy of notice. First, it is a model of legal craftsmanship (Mr. Cook was a farmer). Second, no mention is made of this rather substantial life insurance policy.

Mr. Cook, in addition to farming on a large scale, also was a pilot and engaged in commercial crop dusting. He was fatally injured in a plane crash and died on September 30, 1972. On October 3, 1972, his holographic will was probated and letters testamentary were issued on October 4, 1972 to Gayle Franklin Cook.

On October 10, 1972, Gayle Franklin Cook filed a Claimant's Statement with Lincoln American in order to collect the proceeds of the life insurance policy. In response to question 12, asking "(i)n what capacity, or by what title, do you claim this insurance? The entered response was

Benificiary (sic) and executor of estate.

On November 7, 1972, Lincoln American issued its draft in the sum of $76,111.25, payable to:

Gayle F. Cook, Beneficiary.

We find all the foregoing to be the facts as revealed by the undisputed proof.

## II.

This suit was instituted in January 1973. The original complaint proceeds upon the theory that the insurance proceeds were collected and held by Gayle Franklin Cook, in trust for the use and benefit of James Perry Cook; and that the trustee had converted said funds to his own use and benefit, in violation of instructions given by James Milton Cook in his lifetime.

By Amendment to the Complaint it is asserted that under Sec. 56-1108, T.C.A., the insurance was payable to the executor, and since there was no mention of it in the will, it passed directly to James Perry Cook, through the executor, free from all claims of creditors.

The answer of Gayle Franklin Cook generally denies the theories of relief as asserted by the complaint; however, it contains certain significant admissions and statements which we here set forth:

. . . the defendant also states that he expects to use the money to pay the debts of the decedent and to make such other dispositions of it as his brother wanted him to make.

By answer to the Complaint, as amended, Gayle Franklin Cook, says:

. . . he expects to use the proceeds for the payment of his brother's debts, for the decedent's stepson and for the decedent's minor son.

Other charges and denials are set forth in the respective pleadings; however, it would serve no useful purpose to elaborate upon them.

## III.

Since this case was disposed of by the Chancellor on Motion to Dismiss made at the conclusion of all the plaintiff's proof, we must review and evaluate the proof with a view to determining the correctness of his conclusions.

Plaintiff's proof consisted of the documentary evidence hereinabove summarized, the discovery deposition of Larry Page and the oral testimony of Virginia L. Cook. We summarize the pertinent parts of this testimony.

Larry Page, an agent for Lincoln American, wrote the policy. James Cook came to his office in Trimble, on April 19, 1971 and executed the change of beneficiary form. James Cook told him that he and Mrs. Cook were having marital difficulties and said that "he did not wish for his wife to receive the benefits if death occurred."

He testified to the death of James Cook, the presentation of a claim by Gayle Franklin Cook, and payment to him of the policy proceeds.

Mrs. Cook called him on April 20, 1971 and he confirmed the fact of the change of the beneficiary. He did not talk with her again until after Mr. Cook was killed. In two conversations he confirmed the fact of coverage and advised that payment had been made to Gayle Franklin Cook. Sometime during the summer preceding James Cook's death, Page advised her that James Cook had told him that Gayle F. Cook "knew about his business and that Frank (Gayle F. Cook) would take care of it." James Milton Cook had so advised him on the date he changed the beneficiary.

Page testified that he had no knowledge of any desire on the part of James Cook

that the insurance proceeds be held in trust.

Virginia L. Cook testified that she knew of the existence of the insurance policy and that she was the primary beneficiary. After she and Mr. Cook started having domestic difficulties, and at about the time the divorce suit was filed, he told her he had changed the beneficiary to his brother, Frank. At this time he told her:

I don't want you having any of it. I want to put it in my brother's name, so that I'll know that my son will be taken care of the way he's always lived, and be housed and clothed and educated the way I would want him to be if I was living.

Mrs. Cook further testified that she called Larry Page who advised her that her husband "had changed beneficiaries from my name to Frank's so that Frank would take his estate and take care of his son." Completing her version of this conversation she says Frank was to take the estate "(t)o make sure that his son was educated and clothed."

She testified to a conversation with Gayle Franklin Cook and his brother John Cook, after her husband's death. She relates the conversation thusly:

They told me that, if I ever needed anything, that they were willing to help me, and I told them, I appreciated that, and they told me if I needed any help with James Perry Cook, my son, that they wanted him to have what his father wanted him to have, and would help me send him to school and clothe him or whatever it took for him.

At that time she had no knowledge of the will.

Subsequently, Gayle F. Cook came by her house and, pursuant to her inquiry, advised her that the insurance was made "to me and to me only." Then she states:

I asked him if it was going to be put in a trust fund, or how it was going to be

fixed, and he said, he would rather not discuss that.

Since that time he has declined to discuss the insurance proceeds with her.

By way of reiteration she testified that her husband said: "he wanted it all (insurance) to go to the benefit of his son and his only son, James Perry Cook", but that "he didn't want me to have any of it."

On cross examination Mrs. Cook stated:

He told me when he had it changed, when he had Frank made beneficiary, that he wanted that insurance to go to his son for his educational purposes, housing, and wanted his son to live like he had always been used to living.

We have combed the record and find no other proof having any substantial bearing upon the trust question.

## IV.

At the conclusion of all the proof all defendants moved to dismiss. These motions, of course, were impliedly predicated upon Rule 41.02(2), Tenn.R.Civ.P.

During the course of the ensuing argument, counsel representing Gayle F. Cook made the following statement:

At the proper time, and this estate is out of the way in Dyer County, this man certainly will have to account for these proceeds.

The Chancellor, at the conclusion of argument, summarily dismissed the suit. In so doing, we think he erred. Quite aside from the usual presumptions, inferences and intendments accorded plaintiff's proof in the face of a motion to dismiss, there were other and more compelling considerations.

■ He was dealing with a case that involved a substantial sum of money allegedly belonging to a minor, a special ward of the court. Indeed, the Chancery Court acts as guardian for all persons under disability. See Note 26, sec. 44, Gibson's Suits in Chancery.

■ We fully recognize that to establish a trust the proof must be "clear, cogent, convincing, and irrefragable." Seaton v. Dye, 37 Tenn.App. 323, 263 S.W.2d 544 (1953); Greene v. Greene, 38 Tenn.App. 238, 272 S.W.2d 483 (1954).

■ The proof presented in this case, standing alone, did not measure up to that standard, but it does not stand alone. The admissions of the Answer and of counsel for Gayle Franklin Cook, when considered along with the testimony as above outlined, combine to make it a certainty that these insurance proceeds are, in whole, or in part, trust funds. A judgment in the Chancery Court is the concurring result of the pleadings and the proof. It must be based upon the Complaint and the admissions of the Answer; or on the Complaint and the proof; or on the Complaint, the admissions of the Answer and the proof. This is the rationale of Sec. 597, Gibson's Suits in Chancery. Nothing in the new Rules of Civil Procedure invalidates these principles of adjudication.

The learned Chancellor left this matter dangling. A valid and just disposition of this case without the full testimony of Gayle F. Cook and without a vigorous, robust and uninhibited cross examination of him, is an utter impossibility. The interest of justice demanded a full investigation. Such an investigation was abruptly terminated.

## V.

The Court of Appeals, in a divided opinion, modified and remanded the case. The majority held that the insurance proceeds did not pass under the will of James Cook and, therefore, Gayle F. Cook did not take the proceeds in the capacity of executor.

■ We concur in this holding. There is nothing in this record which would support, or tend to support a contrary conclusion.

■ Virginia L. Cook insists that Sec. 56-1108,[1] Tennessee Code Annotated, is controlling. For this statute to be applicable in this case, there must first be a finding that Gayle Franklin Cook was beneficiary in his official capacity as executor. We concur with the Court of Appeals that the evidence does not support such a finding. The proceeds of an insurance policy do not pass by will so as to defeat the rights of the named beneficiary. Metropolitan Life Ins. Co. v. Bryant, 28 Tenn. App. 473, 191 S.W.2d 449.

■ The Court of Appeals further held in substance that the Chancellor erred in dismissing the Complaint as to Gayle Franklin Cook, since the Answer admits that there was an oral trust for the benefit of James Perry Cook and the Chancellor should have required the terms of the trust to be made known to the end that it be properly administered. We concur generally in this conclusion.

We hold that from the pleadings, the proof and the admission of counsel in the trial court the insurance proceeds, in whole or in part, were received by Gayle Franklin Cook, in trust for James Perry Cook. This holding is bolstered by the fact that counsel conceded at the Bar of this Court, in oral argument, that there was a trust.

■ We affirm the action of the Chancellor in dismissing this suit as to American Lincoln. The fact that their handling of the change of beneficiary and payment of the policy proceeds may have been somewhat slipshod does not justify their continuance in this action. The policy proceeds have been paid and appropriate action has been taken in the trial court to safeguard them.

We remand this case to the Chancery Court at Union City, for further hearing under the following guidelines:

a. The entire record in this cause will be deemed and treated as a part of the record on remand, without the necessity for recalling any witness, rereading any deposition, or re-introducing any document.

b. Plaintiff will have the right to recall any witness for further examination.

c. Defendant will have the right to recall any witness for further cross-examination.

d. Either party will have the right to call any additional witness.

The Chancellor shall insure a full investigation into this controversy to the end that the precise nature and extent of the trust be developed and declared.

It being evident that there is hostility between Gayle Franklin Cook, the appointed (but not qualified) guardian, and Virginia L. Cook, mother and natural guardian, and it being further evident that there is a possibility of a conflict of interest on the part of Gayle Franklin Cook, this Court directs that the Court appoint a disinterested person to serve as guardian pendente lite or may cause the insurance proceeds to be paid into the Registry of the Court, to be managed and invested, pendente lite, under the direction and supervision of the Court. Upon the determination of the precise terms of the trust, the Court will appoint a permanent guardian, not handicapped by any conflict, hostility or incompatibility.

As modified and amplified, the judgment of the Court of Appeals is affirmed.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concur.

1. Sec. 56-1108 provides as follows:
*Effect of proceeds being payable to estate.*— Any life insurance effected by a husband on his own life, shall in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the statutes of distribution, without being in any manner subject to the debts of the husband. Provided, however, that the proceeds of such insurance payable to a testate estate shall pass, as part of the estate and under the dispositive provisions of the will, as ordinary cash whether or not the will uses any apt or express words referring to the insurance proceeds, but such proceeds shall not be subject to the debts of the husband unless specifically charged therewith in the will.