IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 26, 2009

## JEROME WILLIAM DEVEREAUX, JR., ET UX. v. JEROME WILLIAM DEVEREAUX, SR., ET UX.

**Appeal from the Chancery Court for Jefferson County**
**No. 05-147      Telford E. Forgety, Jr., Chancellor**

––––––––––––––––––

**No. E2008-00861-COA-R3-CV - Filed June 5, 2009**

––––––––––––––––––

This case involves a family dispute over real property. The plaintiffs filed suit to enforce a document which purported to convey to them a co-ownership interest in certain property and to estop and enjoin the defendants from selling the property at issue. After a bench trial, the trial court found that the plaintiffs were "equitably entitled to ownership of the five acre tract they have improved." We affirm.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

Jerome W. Devereaux, Sr., Wartburg, Tennessee, pro se.

John M. Norris, Strawberry Plains, Tennessee, for Appellees, Jerome William Devereaux, Jr. and Patricia Devereaux.

## OPINION

## I. BACKGROUND

In 1991, the defendants, Jerome William Devereaux, Sr. ("Father"), and his wife, Jane Devereaux ("Stepmother"), moved to Strawberry Plains, Tennessee, from New Jersey and became owners of approximately 96 acres on Blue Springs Road in Jefferson County. Shortly after purchasing the property, they delivered to the plaintiffs, Jerome William Devereaux, Jr. ("Son") and his wife, Patricia Devereaux ("Wife"), a document entitled "This Deed." The handwritten document provided as follows:

Is for Co-ownership to all property at 3523 Blue Springs Road, Strawberry Plains Tenn. and [entitles] you to pick a spot for yourself and your family to live.

You will never know how much you & Pati are a part of my life. I thank you for sharing your life with me. I'm going to miss breakfast time every morning, and your calls and questions or words of wisdom, and you being 4 Blocks away – not [too] close – but always close enough.

The only negative part of our moving to Tenn. is that you won't be 4 Blocks away anymore.

I pray that one day you will decide to use this Deed.

I Love You,
Dad & Jane

P.S. You have always been a #1 son.

In 1996, the plaintiffs purchased a double-wide mobile home and placed it upon an approximately five-acre tract of the Blue Springs Road property. They added a swimming pool, a garage, a drain field, and utilities. Permanent additions were made to the mobile home which are fixtures to the land. Son cleared the land for a yard and an orchard. He also constructed a 3000-foot driveway from Blue Springs Road to the home.

By 2005, Father was in prison as a result of a felony conviction.[1] Stepmother was in the process of obtaining a divorce, and, according to the trial testimony of Son, told the plaintiffs "to find a new place to live" because the property on which the plaintiffs lived was being sold. The plaintiffs, therefore, brought this action to defend their interest in the five-acre tract they claimed. In their lawsuit, the plaintiffs advanced two theories: (1) transfer by deed and (2) transfer by equitable estoppel. Stepmother did not defend and quitclaimed her interest to the plaintiffs on August 7, 2007.[2]

The trial in this matter was held on March 10, 2008, with Father participating by speaker phone. At the conclusion of the proceeding, the court announced the following from the bench:

There was without question a deed, a document executed by Jerome, Sr. back in 1991, which certainly leaves a lot to be desired and Jerome, Sr. has done a good job, a very good job actually of pointing out how that document is legally insufficient to serve as a deed itself.

[1] Father has been in the custody of the Tennessee Department of Correction and has been housed at the Morgan County Correctional Complex in Wartburg, Tennessee, at all times relevant to this appeal.

[2] Father notes in his reply brief that Stepmother had previously quitclaimed the same property to him as part of their divorce.

He points out that there is no legal description of land in there, he points out that the document entitled "Deed" does not have Jerome, Jr.'s name nor Patricia's name on it. He points out that the document does not have his legal signature on it nor that of his wife, Jane. And the Court has made note of all of those things.

Nevertheless, and at the same time, Jerome, Sr. has not denied that he wrote that document out, and that he delivered it to Jerome, Jr. and Patricia, indeed delivered the same thing to his other children at the same time.

Moving on, from the time that document, that deed, that whatever it was, was written out by Jerome, Sr. and delivered to Jerome, Jr. and wife, Patricia, back in 1991, Jerome, Jr. and wife, in reliance upon that document, did many things to improve that piece of property.

The evidence here, the preponderance of the evidence here is that they bought a doublewide mobile home, put it on the property, and made a number of other improvements. Built a garage, built decking, built front porch, built a driveway and many other things.

Now, to be sure, the evidence is to the effect that Jerome, Sr. participated in helping to make all of those improvements, however, the Court does not see that that [fact] detracts or takes away from the lawsuit, the claim of Jerome, Jr. and wife, Patricia.

If anything, the fact that Jerome, Sr. participated in making those improvements, the Court feels strengthens the claim of Jerome, Jr. . . . .

The Court observes that this document, this deed, says that "[Is] for co-ownership to all property at 3523 Blue Springs." All property, which was about ninety-six acres, "and entitles you to pick a spot for yourself and family to live." "And entitles you to pick a spot for yourself and your family to live."

Now, to be sure that language is ambiguous, you know, and could be taken to mean different things. That language entitles you to pick a spot for yourself and your family to live. What is not ambiguous here is what happened after that, and what happened after that is what the Court has already referred to.

That is that Jerome, Jr. and wife, Patricia, spent many, many tens of thousands of dollars, the Court has not totaled up the whole amount, but many, many tens of thousands of dollars, something over, in excess of a Hundred Thousand Dollars on this piece of property, all with the knowledge, all with the . . . and much with the participation of Jerome, Sr.

In other words, Jerome, Sr. knew all along that in reliance upon this document, this "Deed," Jerome, Jr. and wife were setting up their home, were spending many tens

of thousands of dollars to make it their home, and Jerome, Sr. allowed that to happen, indeed participated and helped that to happen.

So, the Court concludes that looking at this document, this "deed," while Jerome, Sr. may be correct, that the document itself by itself might not otherwise be enforceable as a deed, clearly, based upon the actions of Jerome, Sr. he should be and will be estopped from taking the position that the property was not in equity conveyed to Jerome, Jr. and wife, Patricia.

For the Court finds that it was the intention of the parties, based upon the document, but based more so on the parties' actions after the document and in particular, Jerome, Sr.'s action, that it was the intention of the document all along to convey the property to, to convey this five acres to Jerome, Jr. and wife, Patricia, as their "spot for yourself and your family to live."

I observe that in Mr. Devereaux, Sr.'s Answer to this lawsuit, among other things he says in Paragraph 3, "Defendant admits in part to preparing a document that asserts co-ownership to all property. But denies such was for the purpose of actually conveying "co-ownership" to the plaintiffs or any ownership."

Defendant admits in Paragraph 4, that "Plaintiffs beginning in April, 1996, undertook to move onto the property described in Exhibit "A," and likewise purchased a doublewide mobile home from [Luv] Homes and had it placed upon the property."

"Defendant admits that the arrangement between the parties call[ed] for the plaintiffs to make all monthly payments on the mobile home, would reside in the mobile home, that the mobile home would belong to the plaintiffs, and that the price of the mobile home totaled $55,004.99."

The Court finds that that's exactly what did happen. That is exactly what did happen.

Paragraph No. 5. "Defendant admits in part to the plaintiffs' allegations in Paragraph 5, related to the additions and home improvements made to the premises." But "alleges he's without sufficient knowledge or information or belief as to the truth of the plaintiffs' allegations. A recent appraisal of plaintiffs' trailer and additional three acres were valued at $100,000.00."

The point is, Jerome Devereaux, Sr. admits the improvements to the property, that Jerome Devereaux, Jr. and wife, Patricia, allege they made.

Paragraph 6. "Defendant denies that he intends to sell all ninety-five acres of his property, denies that the selling includes plaintiffs' trailer, and further denies that he intends to dispose of the property without plaintiffs realizing any benefit from the sale."

-4-

The effect of that is, that Jerome Devereaux, Sr. recognizes that Jerome Devereaux, Jr. and wife, Patricia, had an interest in the property himself.

* * *

But the bottom line, it appears to the Court that the parties to this transaction, as ambiguous as the original "Deed" was, the parties to this transaction treated Jerome, both sides of the parties to this transaction, treated Jerome Devereaux, Jr. and wife, Patricia, in equity as the owner of that piece of property.

Since the parties themselves treated Jerome, Jr. and wife, Patricia, as the owners of that piece of property, the Court must and will treat them as the owners of that piece of property.

Finally, the Court observes that the Title to the whole ninety-six acres back in 1991, when this document entitled "Deed" was made, was held apparently by Jerome, Sr. and wife, Jane.

Jane Devereaux has, and it is in the record here, the Court observes, has made a Quit Claim Deed from herself to Jerome, Jr. and wife, Patricia, which further reinforces the conclusion that the intention of the parties was that Jerome, Jr. and wife, Patricia, were to be the owners of the property.

* * *

By judgment entered on April 17, 2008, the plaintiffs were found to be "equitably entitled to ownership of a five acre tract they have improved." The court ordered "[t]hat all right, title and interest of Jerome William Devereaux, Sr. in and to the . . . property is divested out of Jerome William Devereaux, Sr. and vested in Jerome William Devereaux, Jr. and wife, Patricia Devereaux." Father filed a timely notice of appeal.

## II. ISSUES

We restate the following issues presented by Father as follows:

A. The trial court erred in granting judgment in favor of the plaintiffs when the purported deed did not meet the legal requirement of a valid deed and the evidence presented at the hearing did not show that it was ever the intent of Father to actually convey an ownership interest in the property;

-5-

B.  The trial court erred in granting judgment in favor of the plaintiffs without first ruling on all of Father's pending motions;

C.  The trial court denied Father of his right to cross-examination and a defense by interrupting and limiting his cross examination of the plaintiffs on material points;

D.  The trial court erred in failing to find the plaintiffs' action barred by an applicable statute of limitations;

E.  The trial court erred in failing to find the plaintiffs' action barred by the doctrine of unclean hands.


## III.  STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W. 3d 291, 296 (Tenn. Ct. App. 2001). We give great weight to a trial court's determinations of credibility of witnesses.  *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997).  Conclusions of law are reviewed de novo with no presumption of correctness.  *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).


## IV.  DISCUSSION


### A.

Father contends that the purported deed at issue in this case was merely a letter he prepared to encourage Son to move to Tennessee.  He further claims the evidence presented during the proceedings did not show that it was ever his intent to actually convey an ownership interest in the property; rather, his intent was to allow the plaintiffs a spot on which to place a mobile home and to live – not to own.  He argues the assistance he gave the plaintiffs was in fulfillment of his intention to allow them a place to live on his property. Father rejects the plaintiffs' contention that they changed their position in reliance on the document.

Father vehemently denies that the document he gave the plaintiffs was a valid deed.  As noted by the trial court, "[h]e points out that there is no legal description of land in there, he points out that the document entitled "Deed" does not have Jerome, Jr.'s name nor Patricia's name on it. He points out that the document does not have his legal signature on it nor that of his wife, Jane."

The requisites of a deed are (1) competent parties, (2) sufficient subject matter, (3) consideration, (4) proper words of conveyance, (5) execution and delivery by the grantor to the grantee, and (6) acceptance of the deed on the part of the grantee.  *See Black's Law Dictionary* (7th

ed.) at 423; 23 Am. Jur. 2d *Deeds* §§ 12, 13. Additionally, Tennessee's Statute of Frauds provides, in pertinent part, that

> no action shall be brought . . . [u]pon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year . . . unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

T.C.A. § 29-2-101(a). The requirement that the memorandum be signed is meant to guarantee that the grantor has given his assent to the agreement. *Cunningham v. Lester*, 138 S.W.3d 877, 881 (Tenn. Ct. App. 2003).

The purpose of the Statute of Frauds, however, is not to allow a party to avoid agreements he or she has made. *Cobble v. Langford*, 230 S.W.2d 194, 196 (Tenn. 1950). The Statute of Frauds merely makes a contract unenforceable – not void – and its requirements may be waived. *Id.* It has long been recognized in our courts that strict application of the Statute of Frauds can lead to evils as undesirable as those it was designed to limit or prevent. *Southern States Dev. Co. v. Robinson*, 494 S.W.2d 777, 781 (Tenn. Ct. App. 1972). Consequently, it "should not be used to avoid contracts or to grant a privilege to a person to refuse to perform what he has agreed to do." *GRW Enter. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990) (quoting *Cobble*, 230 S.W.2d at 196).

As described by Father, there were deficiencies in the purported deed – the most crucial being the lack of signatures in violation of the Statute of Frauds. The trial court found, however, that in the interest of equity and fairness, Father was estopped to avoid his agreement with the plaintiffs. Estoppel based on principles of equity may be applied to preclude assertion of the Statute of Frauds to avoid an agreement to transfer real property. See *Smith v. Smith*, No. M2004-00257-COA-R3-CV, 2005 WL 3132370, at *6 (Tenn. Ct. App. M.S., Nov. 22, 2005).

In *Baliles v. Cities Serv. Co.*, 578 S.W.2d 621 (Tenn. 1979), the Tennessee Supreme Court described equitable estoppel as follows:

> Equitable estoppel, in the modern sense, arises from the "conduct" of the party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do any thing. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or have been enforceable by other rules of law, unless prevented by estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.

*Id.* at 624. Whether a party should be estopped depends upon the totality of the factual situation. *Smith*, 2005 WL 3132370, at *7. We noted in *Smith* that

[t]he general requirements for reliance on equitable estoppel are conduct by the party to be estopped that is relied upon by the other party, leading him to change his position. In most situations,

[t]he doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted:

> (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

Equitable estoppel also requires the following elements with respect to the party asserting estoppel:

> (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Id.* (quoting *Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004) (citations omitted)).

We further indicated in *Smith* that

> [t]he "conduct" that gives rise to estoppel includes omissions as well as commissions and "embraces not only ideas conveyed by words written or spoken and things actually done, but includes the silence of such person and his omission to act, as well." *Church of Christ v. McDonald*, 171 S.W.2d [817,] 821-22 [(Tenn. 1943)].

*Id. at \*8.* Thus, silence, failure to act, or acquiescence may be sufficient to invoke equitable estoppel. *Id.* There is no requirement that an actual intent to deceive be shown. *Id.* Instead, the basic premise is that once a party acts, or refrains from acting, in such a way as to indicate agreement, and another party reasonably relies on that indication of agreement, the first party cannot later assert a contrary position. *Id.*

The record reveals that Father never voiced any objection or opposition to the plaintiffs' use of the five acres. He never expressed any disagreement with the additions and improvements made to the property. Father's conduct indicated agreement with the purported deed's contents and gave the impression that he acquiesced in the terms of the document. His arguments at trial and on appeal address the role the plaintiffs purportedly played years later in the loss of the bulk of the property Father retained. He does not present any evidence to refute that he intended to make the plaintiffs co-owners of the property at the time he gave them the document. The record on appeal reveals that

the plaintiffs moved to Tennessee from New Jersey and made expenditures of time and money to improve the property given to them by Father. Most of the improvements were a joint effort between Father and Son. All of the improvements were apparently based on the promise that the plaintiffs had a portion of the land on which to make a home. There is no evidence of record to contradict the trial court's finding that the plaintiffs relied in good faith on the agreement and upon the conduct of Father. Accordingly, the evidence preponderates in favor of the finding by the trial court that the plaintiffs reasonably relied upon the document and that equitable estoppel should be applied.

## B.

Father contends that the trial court failed to rule on all his pretrial motions. According to Father, without the requested discovery and witnesses, he was incapable of fully setting forth his defenses to the claims of the plaintiffs.

Father notes in his brief that he prepared and served interrogatories on the plaintiffs in December of 2005. He claims that the responses he received from the plaintiffs were incomplete. He thereafter mailed to the trial court a motion to compel, which was filed on February 9, 2006. Father requested that the motion be set for a hearing, but the record before us does not reveal that a hearing was ever held. Subsequently, in a motion filed on March 3, 2006, Father moved to file additional interrogatories. There is no evidence of record that this motion was ever addressed.

Father's only pretrial motion that was addressed by the trial court was the motion to transport him to Dandridge for the trial. That motion was filed shortly before a previously scheduled trial date on November 21, 2007, and was ruled upon in an order dated December 14, 2007.[3] In the memorandum accompanying that motion, Father informed the court that he had "requested discovery and a motion to compel discovery most of which was never received nor ruled upon." Father did not otherwise renew the motions or specifically request that the court rule on the motions prior to trial. On the day of trial, Father did not mention the matter of the pending motions to the court.

At the beginning of the trial, Father did raise the issue of the absence of his witness, Bruce Devereaux, another one of Father's sons. The record reveals that Father had sent a letter to the court clerk at an earlier trial date (November 29, 2007) requesting that Bruce Devereaux be subpoenaed to appear. However, for the March 10, 2008, trial date, Father did not again request the subpoena, and Bruce Devereaux was not present. In denying Father's request for a continuance, the trial court instructed Father as follows:

---

[3]The trial court denied Father's motion to be transported from prison for the trial, but allowed him to present evidence in written form, such as depositions, affidavits, and letters addressed to the court. At a later date, the trial court ordered that Father be allowed a telephonic connection at trial.

[I]t is, of course, your responsibility, not the clerk's, to keep up with the dates that trials are set and when they're continued to do whatever is necessary to get yourself ready, once again, for the trial, when the matter was continued.

And apparently there was no Subpoena issued for today, for Mr. Bruce Devereaux. So the bottom line of it is, we're going to go ahead and proceed and try this matter. . . .

Father argued as follows in his brief:

Jerome Sr. would assert that the requested discovery was needed in his defense in that such would have shown unequivocally the finances of the defendants including the fact that the money that plaintiffs have submitted to the court, as having paid to mortgage companies etc., was actually the defendants money the plaintiffs had collected from Jerome Sr.'s trailer park, and other rental property, which was to be collected and used to pay the mortgage on said trailer park as well as the 96 Acres Blue Springs Rd property issue.

In addition the collective discovery and answers to the interrogatories would have shown that it was the collective negligence and mismanagement on the part of the plaintiffs that resulted in the complete financial ruin and circumstances of which caused the action.

The discovery here would have shown further that Jerome Sr. did in fact loan Jerome Jr. one hundred and eighty thousand dollars and as well would have required plaintiffs to provide the evidence, i.e., checks, receipts etc., that they were relying upon to prove their case which instead resulted in Jerome Sr. being surprised by telephone with the admission of evidence he has never even seen.

The error in the lower court has clearly prevented and interfered with the substantial defense of the defendant while allowing the plaintiffs to position and misrepresent that they were making payments of their own finances when such actually belong to the defendant.

In addition the above has simply left the self-represented litigant in a position of trying to prepare for and fight against, already challenging and difficult, litigation, of which was brought against him, and that resulted in a significant loss of property absent the due process or other protections of the law.

Father represented himself in this matter. This court has previously noted that "an incarcerated litigant's right to meaningful access to the court requires that [he or she] be afforded a fair opportunity to present his or her side of the controversy." *Knight v. Knight*, 11 S.W.3d 898,

903 (Tenn. Ct. App. 1999). As this court noted in *Chastain v. Chastain*, No. M2003-02016-COA-R3-CV, 2004 WL 725277 (Tenn. Ct. App. M.S., March 31, 2004),

> [s]ince discovery plays an important, and sometimes pivotal, role in a prisoner's ability to present his or her side of the controversy, an incarcerated litigant has a right to expect the trial court to address and resolve discovery disputes in a timely manner prior to a hearing on the merits. The courts should not ignore motions of substance and proceed as if they had not been filed.

*Id.*, at *2 (footnote omitted)(citing *Marion v. Bowling*, No. 03A01-9906-CV-00229, 1999 WL 1059670, at *4 (Tenn. Ct. App. E.S., Nov. 22, 1999) (No Tenn. R. App. P. 11 application filed) (Franks, J., dissenting)).

There is no indication in the record that the trial court either considered or disposed of Father's pending discovery motions prior to the trial. As this court noted in *Bell v. Todd*, 206 S.W.3d 86, 91 (Tenn. Ct. App. 2005):

> Appellate courts frequently have been confronted with cases in which the trial courts have disposed of claims either filed by or asserted against self-represented prisoners without first addressing the prisoner's pending motions. No matter whether the prisoner is the plaintiff or the defendant, reviewing courts have consistently held that trial courts err when they proceed to adjudicate the merits of the claim without first addressing the prisoner's pending motion or motions. These oversights have generally been found to be prejudicial rather than harmless because the failure to address the pending motions "give[s] the impression that a litigant is being ignore[d.]" We have also held that a prisoner's failure to comply with local rules requiring motions to be set for hearing does not provide a trial court with an excuse for failing to address the pending motions. Accordingly, when a trial court has failed to rule on an incarcerated litigant's pending motions, reviewing courts have consistently vacated the judgment and remanded the case to the trial court with directions to consider and act on pending motions.

*Id.* (citations omitted)(quoting *Logan v. Winstead*, 23 S.W.3d 297, 303 (Tenn. 2000); see also *Reese v. Klocko*, No. M2007-02486-COA-R3-CV, 2009 WL 910220, at *3-4 (Tenn. Ct. App. W.S., April 3, 2009); *Gilliam v. Gilliam*, No. M2007-02507-COA-R3-CV, 2008 WL 4922512, at *3-4 (Tenn. Ct. App. M.S., Nov. 13, 2008); *Reese v. Klocko*, No. M2005-02600-COA-R3-CV, 2007 WL 1452688, at *4 (Tenn. Ct. App. E.S., May 16, 2007); *Chastain*, 2004 WL 725277, at *2; *Knight*, 11 S.W.3d at 906.

This court is troubled by the trial court's handling of Father's motions, particularly in light of the fact that Father was not allowed a continuance when his only witness, Bruce Devereaux, was inadvertently not subpoenaed to appear for the March 10 trial date. However, the additional discovery that Father discusses in his brief was irrelevant to the narrow primary issue – equitable estoppel – before the trial court. A review of the record reveals that on the day of the trial, the court did not in any way prevent Father from presenting his case in full. This is not a case where the

prisoner was not allowed to present his defense at trial – Father participated in the proceedings by speaker phone. He was allowed to cross-examine the plaintiffs, testify, and make a concluding argument. He failed, however, to mention the pending motions at any point during the trial. An appellate court "may only decide issues which were brought to the attention of the trial judge, 'and acted upon or pretermitted by him.'" *In re Sentinel Trust Co.*, 206 S.W.3d 501, 528 (Tenn. Ct. App. 2005) (quoting *Clement v. Nichols*, 209 S.W.2d 23, 24 (Tenn. 1948)). Accordingly, in our view, under the particular facts of this case, the issue concerning the pending motions must be considered waived. We find that the trial court's failure to rule on Father's discovery motions was harmless error.

**C.**

Father argues that the trial court denied him the right to effectively cross-examine the plaintiffs by interrupting and limiting him.

A review of the transcript of the proceedings reveals that Father attempted to inquire as to many matters that were not relevant to the germane issues before the court. He repeatedly attempted to question the plaintiffs regarding income and tax information. He contended that the information he sought went to his asserted defense of unclean hands on the part of the plaintiffs.

While the trial court, on several occasions, had to remind Father to ask questions rather than make statements, the court did not in any way prevent Father from participating in the trial, cross-examining the plaintiffs, or presenting his defense to the claim. Under the circumstances, the court conducted the trial in the best manner possible to properly accommodate Father given the logistical limitations. Our review reveals that Father received a full and fair hearing.

**D.**

Father claims that the action by the plaintiffs was time-barred. He states that because he delivered the deed to the plaintiffs in 1991, and the cause of action was not filed until 2005, any complaint by the plaintiffs was barred by the applicable statute of limitations.

The case before us does not present a statute of limitations issue, as the lawsuit was filed shortly after the justiciable dispute between the parties arose. This contention does not warrant further discussion.

**E.**

Father asserts that the plaintiffs should be barred by the doctrine of unclean hands. He claims that the plaintiffs should not be allowed to profit from their own wrongdoing, since, after Father was imprisoned, they contributed to the circumstances that resulted in the loss of the bulk of the property by, inter alia, neglecting Father's rental properties, refusing to make the required payments on the

mortgages, and failing to collect rents that would have been sufficient to pay off in full all the mortgages on all the properties. The following testimony by Father sums up his position:

> I worked my whole life to pay for that place, to work at it, to keep it and make it what it was. They did put some money into it but they ruined me. And whether it was intentional or not intentional, I don't know. But the fact remains.

Under the doctrine of unclean hands,

> he who comes into a court of equity, asking its interposition in his behalf, must come with clean hands; and if it appears from the case made by him or by his adversary that he has himself been guilty of unconscionable, inequitable, or immoral conduct in and about the same matters where of he complains of his adversary, or if his claim to relief grows out of or depends upon or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.

*C.F. Simmons Med. Co. v. Mansfield Drug Co.,* 23 S.W.165, 168 (Tenn. 1893). "[A] complainant, who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction." *Hogue v. Kroger Co.*, 373 S.W.2d 714, 716 (Tenn. 1963) (quoting Henry R. Gibson, *Gibson's Suits in Chancery* § 51, at 63 (Arthur Crownover, Jr., ed., 5th ed. 1955)). The operation of the maxim is confined to misconduct connected with the subject matter of the litigation. *Greer v. Shelby Mut. Ins. Co.*, 659 S.W.2d 627, 630 (Tenn. Ct. App. 1983) (citing Henry R. Gibson, *Gibson's Suits in Chancery* § 18, at 20-21 (William H. Inman, ed., 6th ed. 1982)).

The plaintiffs point out that the maxim of "he who comes into equity must come in with clean hands" applies only to the conduct of the party with respect to the particular transaction under consideration. They assert that the doctrine is not applicable when the misconduct complained of is not connected with the subject matter of the suit. *See Nolen v. Witherspoon*, 187 S.W.2d 14, 16 (Tenn. 1945); *Seaton v. Dye*, 263 S.W.2d 544, 550-51 (Tenn. Ct. App. 1953).

Nothing in this record indicates any misconduct on the part of the plaintiffs with regard to the handwritten document giving them the opportunity to select a place for their home or in the making of improvements to the premises with the active assistance and acquiescence of Father. The matters raised by Father relate to a time and conduct altogether different than the subject matter before the trial court. Accordingly, we find in favor of the plaintiffs on this issue.

## V. CONCLUSION

-13-

The trial court's judgment is affirmed. This case is remanded to the trial court for further proceedings pursuant to applicable law. Costs on appeal are taxed to the Appellant, Jerome William Devereaux, Sr.

_____
JOHN W. McCLARTY, JUDGE