Mildred BROWDER, Plaintiff-Appellee,

v.

Hayward HITE and wife, Elsie Hite,
Defendants-Appellants.

Court of Appeals of Tennessee,
Western Section.

March 13, 1980.

Application for Permission to Appeal Denied by Supreme Court June 23, 1980.

**490**

Terry Abernathy, Selmer, for plaintiff-appellee.

William Houston Brown, Jackson, for defendants-appellants.

NEARN, Judge.

Suit was filed by Mildred Browder against Hayward Hite et ux. alleging an interest in the plaintiff, by theory of a constructive trust, in certain real property held in the name of defendants. Additionally the complaint sought the return of certain monies which the plaintiff had entrusted to the defendant Hayward Hite.

 The Chancellor filed a comprehensive "Trial Opinion" wherein he set forth the pertinent facts, the law he believed to be relevant and his conclusions therefrom. We are pleased to here copy same:

"The plaintiff, Mildred Browder, is the widow of Arlander Browder, who died on January 28, 1978. The defendant, Hayward Hite is a nephew of Arlander Browder.

"In the latter part of 1977, Mrs. Browder and her husband moved to McNairy County in the State of Tennessee and obtained, without consideration, a lot from the defendants, Mr. and Mrs. Hite, with the intention of obtaining a Farmers Home Administration loan to build a house on the property. Thereafter, because of the loan delay and the need for suitable lodging, the plaintiff and her husband located a house and tract of land, near their lot in McNairy County, consisting of 2.6 acres, more or less, owned by the heirs of Eril Blanton and wife, Janette Blanton.

"The plaintiff's husband handled all negotiations for the purchase of this property for the sum of $8,000.00, in cash, and the money realized from the sale of a former residence in Illinois was used to finance this purchase. It was agreed between the defendant, Hayward Hite, and Mr. Browder to place the title to the real property in the name of Mr. and Mrs. Hite, so that the ownership of this property would not affect the Browder's application for the Farmers Home Administration loan. This plan for conveying and titling the real property was carried out, the plaintiff contends, with the understanding that this real property would be conveyed to the Browders as soon as their Farmers Home Administration loan had been approved and closed. It is undisputed that on January 21, 1978, C. E. Blanton, Ema Raines, Nelle Howard, Jewele Howard, and Marie Sweat, the heirs at law of Eril Blanton and wife, Janette Blanton, conveyed by warranty deed the property in the Ninth Civil District of McNairy County, Tennessee, consisting of 2.6 acres, to the defendants, Hayward Hite and wife, Elsie Hite. Within a few days after the closing of this transaction, Mr. Browder died, and the defendant, Hayward Hite, later refused to convey the property to Mrs. Browder.

"Also, soon after the death of Mr. Browder, the plaintiff delivered to Mr. Hite, the sum of $7,200.00, in cash, for safe keeping, and the plaintiff at that time had no bank account nor any other safe place to keep this sum of money. The plaintiff says that upon her request Mr. Hite has returned to Mrs. Browder the sum of $1,300.00, leaving a balance owing to her of $5,900.00, which Mr. Hite refuses to return.

"The defendants assert that Mr. Hite paid the consideration for this conveyance, in cash, in the amount of $8,000.00. Mr. Hite further contends that the purchase was made for the purpose of allowing his uncle, Arlander Browder, to live with his wife in the said property until they built a home on the parcel conveyed by Mr. and Mrs. Hite to Mr. and Mrs. Browder. He further says the conveyance of the lot to the Browders was made without consideration, as a gift by the Hites, upon the understanding that the Browders would build a home on the property. No home has been built on the property at this time. Mr. Hite contends that he returned $3,000.00, leaving $4,200.00 in his hands belonging to Mrs. Browder.

"Mr. Hite further asserts that he made improvements to the real estate involved in this lawsuit, expending his own money for those improvements. He further alleges that Mrs. Browder owes him the sum of

$520.81 for purchases made by her from his store. In addition, he says that Mrs. Browder owes him money for the moving and storage of personal property.

"The issues before the Court are:

"(1) Whether a resulting trust should be created, with the real estate conveyed by the Blanton heirs to Mr. and Mrs. Hite, being declared the trust property, and with the equitable title resulting in Mrs. Browder; or

"(2) Whether there is, instead of a resulting trust, a constructive trust created, through which the Court should remedy any fraud, duress, unjust enrichment, or undue influence.

"(3) Whether Mr. and Mrs. Hite are entitled to a return of the unimproved lot conveyed, without consideration, by them to Mr. and Mrs. Browder.

"(4) Whether Mr. and Mrs. Hite are entitled to payment for improvements made and for moving and storage charges incurred on behalf of Mr. and Mrs. Browder.

"(5) The amount of money owed by the defendants to Mrs. Browder from the $7,200.00, in cash, voluntarily turned over to them for safekeeping.

"In the case of *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 407 S.W.2d 150 (1966), the Supreme Court of Tennessee sets forth some general rules regarding unjust enrichment:

"The law recognized two distince [sic] types of implied contracts; namely, contracts implied in fact and contract [sic] implied in law, commonly referred to as quasi contracts. The distinction between the two has been explicitly stated by the Court of Appeals in *Weatherly v. American Agr. Chemical Co.*, 16 Tenn.App. 613, 65 S.W.2d 592:

" 'Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract. Such an agreement may result as a legal inference from the facts and circumstances of the case. . . .' Contracts implied in law, or more appropriately, quasi or constructive contracts, are a class of obligations which are imposed or created by law without the assent of the party bound, on the ground that they are dictated by reason and justice. . . .' "

"Actions brought upon theories of unjust enrichment, quasi contracts, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto.

"It is well established that want of privity between parties is no obstacle to recovery under quasi contracts. 17 C.J.S. *Contracts* § 6, p. 572; *Mill and Logging Supply Co. v. West Tenino Lumber Co.*, 44 Wash.2d 102, 265 P.2d 807.

"The apparent reason is that such contracts are not based upon the intention of the parties but are obligations created by law. They are founded on the principle that a party receiving a benefit desired by him, under circumstances rendering it inequitable to retain it without making compensation, must do so. See *Noone v. Fisher* (D.C.Tenn.), 45 F.Supp. 653, 655; 35A Words and Phrases, *Quasi Contract*, p. 430.

"*American Jurisprudence*, Restitution and Implied Contracts, § 3, 66 AmJur2d 946, also discusses the basic principles:

"Generally, quasi-contractual liability for unjust enrichment is based upon the ground that a person receiving a benefit which it is unjust for him to retain ought to make restitution or pay the value of the benefit to the party entitle [sic] thereto. Recovery in an action of unjust enrichment depends upon whether, by the receipt of funds in controversy, the defendant was enriched at the loss and expense of the plaintiff. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to

retain a benefit which has come to him at the expense of another. A person who has been unjustly enriched at the expense of another is required to make restitution to the other.

"While the most prevalent implied contract recognized under the doctrine of unjust enrichment is predicated under a relationship between the parties from which the court infers an intent, the doctrine also recognized an obligation imposed by law regardless of the intent of the parties, where good conscience dictates that under the circumstances the person benefited should make reimbursement. Unjust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss.

"*Gibson's Suits in Chancery*, Fifth Edition, Sections 976 and 977, discusses in detail the applications of the doctrines of resulting and constructive trusts in Tennessee;

" '§ 976. *Cases of Resulting Trusts.* —Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called *presumptive trusts*, because the law presumes them to be intended by the parties, from the nature and character of their transactions. They are, however, generally called *resulting trusts*, because the trust is the *result* which Equity attaches to the particular transaction.

"Resulting trusts arise: 1., When property is conveyed, or devised, on some trust which fails in whole or in part; 2., When land is conveyed to a stranger without any consideration, and without any use, or trust, declared; 3., *Where the property is purchased and the title taken in the name of one person, but the purchase price is paid by another;* and 4., *Where the purchaser pays for the land but takes the title, in whole or in part, in the name of another.*

". . . No one is presumed to intend to part with his property, and especially his land, without some consideration; and he who furnished the consideration-money is presumed to intend to acquire a corresponding beneficial interest in the lands purchased therewith. So, when the consideration-money is trust funds, or belongs to another, the person buying property therewith is presumed to intend that the purchase shall enure to the benefit of the person who is beneficial owner of the purchase-money paid. Reason and conscience so determine his duty, and Equity imputes to him an intention to discharge this duty. . . " (At Page 203, Emphasis Supplied)

"§ 977. *Cases of Constructive Trusts.* —Constructive trusts are so called because they are *constructed* by Courts of Equity in order to satisfy the demands of justice, without reference to any presumable intention of the parties; they include cases: 1., Where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; or 2., Where title to property is obtained by fraud, duress, or other inequitable means, or 3., Where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; or, 4., Where a person acquires property with notice that another is entitled to its benefits. In all such cases, Equity, for the purpose of doing justice in the most efficient manner, constructs a trust out of the transaction, and makes a trustee out of the person thus acquiring the title. . . ." Pom. Eq. Jur, § 1044; 1 Perry on Trusts, § 166.

"Whoever deals, in any way, with property which another owns, or has a beneficial interest in, with *notice of such ownership or interest,* impliedly contracts that he will do nothing prejudicial to the rights of such other person; and that he will, in all his dealings with such property and its profits and proceeds, do whatever good reason and good conscience require.

Equity imputes to every person an intention to fulfill his obligations, and will not allow anyone to take an advantage of his own wrong, or to extract a right therefrom. Whenever, therefore, a person takes the title to such property, or its profits, or proceeds, in his own name, in violation of this implied contract, a Court of Equity will specifically execute the contract, by dealing with him as a trustee, and treating him as one intending to do his right, rather than as one intending to perpetrate a fraud. In other words, Equity puts a charitable construction upon his conduct, and thus converts his misconduct into what is called a constructive trust." (At Pages 205 and 206)

"In order to establish a resulting or constructive trust by parole [sic] evidence generally requires a greater degree of proof than a mere preponderance of the evidence.

"In *Cook vs. Cook*, 521 S.W.2d 808, (1975), the Court held that in order 'to establish a trust, the proof must be clear, cogent, convincing, and irrefragable.' See also *Seaton vs. Dye*, 37 Tenn.App. 323, 263 S.W.2d 544 (1953); *Hoffner vs. Hoffner*, 32 Tenn.App. 98; *Hunt vs. Hunt*, 169 Tenn. 1; and *Walker vs. Walker*, 2 Tenn.App. 279.

"In *Linder vs. Linder*, 490 S.W.2d 717 (1972) the Court stated 'proof of an oral trust must be [of] the clearest and most convincing character. It must be so clear, cogent and convincing as to overcome the opposing evidence coupled with the presumption that obtains in favor of the written instrument.'

"To sustain a resulting trust, upon parol evidence, in the teeth of the terms of a written instrument, the Tennessee Supreme Court said it is not essential that the evidence be of the character to remove all reasonable doubt, but only that it be so clear, cogent, and convincing as to overcome the opposing evidence, coupled with the presumption that obtains in favor of the written instrument, *Stone vs. Manning*, 52 S.W. 990 (1899).

"Thus, a resulting trust arises when title is taken in a specific party's name, by intention of the parties; whereas a constructive trust arises not by any intention but rather by act of a Court of equity to overcome the procuring of legal title in violation of some duty, expressed or implied, or where legal title has been obtained by fraud, duress, or other inequitable means, or where undue influence or abuse of a confidential relationship has been utilized to obtain legal title.

"The Court finds that there was a trust relationship created, and, from the authorities, the correct terminology would appear to be "a resulting trust." The concepts of unjust enrichment and confidential relationship are also applicable.

"The Court does not consider the motives of any of these parties to be worthy of much commendation. This transaction appears to have arisen primarily out of a desire to circumvent federal loan regulations. Also, the circumstances of parties consistently dealing in large sums of cash is always suspicious. Nevertheless, the Court still determines that the equities of the situation require that relief be granted.

"Therefore, after considering all of the evidence in this cause, including the credibility of the witnesses, the Court finds that Mrs. Browder is entitled to a judgment against the defendants for the sum of $8,000.00 paid on the house and 2.6 acres titled in the name of Mr. and Mrs. Hite and then conveyed by them to his brother, Anthony Hite, after this controversy arose. The Court also finds that Mrs. Browder is entitled to a judgment for the sum of $5,900.00. Mr. Hite having returned $1,300.00 of the $7,200.00 given him for safekeeping by Mrs. Browder following her husband's death.

"The Court finds it equitable, in view of the decision reached, that Mrs. Browder return to Mr. and Mrs. Hite the lot previously conveyed without consideration being paid. The Court also awards Mr. and Mrs. Hite an offset of $520.81 for bills owing, and an offset of $250.00 for moving and storage of personal property, or a total of $770.81.

"The Court costs will be paid by the defendants."

The defendants appealed and state the following issues as those presented for review:

"1. Whether a resulting trust was correctly found to exist by the Chancellor, with the real estate conveyed by the Blanton heirs to Hayward and Elsie Hite being declared the trust property, and with the equitable title resulting in Mildred Browder.

"2. Whether a constructive trust was established in the same property.

"3. Whether Hayward and Elise [sic] Hite are entitled to a return of an unimproved lot conveyed, without consideration, by them to Mr. and Mrs. Browder.

"4. The amount of money owed by Hayward and Elsie Hite to Mildred Browder from the $7,200.00 cash voluntarily turned over to them for safekeeping."

The plaintiff also appeals from that portion of the decree which orders Mrs. Browder to reconvey the unimproved lot to the defendants but is frank to admit that she would not have appealed had the defendants not appealed. She also states that if the defendants are granted no relief on this appeal, she is content with the decree below.

We have examined the record and find the evidence does not preponderate against the Chancellor's findings of fact. In addition we find no fault with the law relied upon and therefore adopt his Opinion and affirm the decree below.

There are a few facts we would add. The defendants' witnesses, numerically speaking, far outweighed the plaintiff's. However, the defendants' witnesses were all close relatives or employees of Mr. Hite. Actually there were only three people who had first-hand knowledge of the circumstances of the purchase of the property from the "Blanton heirs". Those people were the defendant Hayward Hite, the deceased Arlander Browder and Nelle Howard who was a spokeswoman for the heirs in the negotiations of the sale. Mrs. Browder testified that she and Arlander intended to buy the property and that the evening before the closing she, as keeper of the family money, counted out $8,000.00 in cash which had been hidden in a purse kept under their mattress and gave it to Arlander to purchase the property. She did not attend the closing with Arlander and therefore could not positively testify that Arlander gave the $8,000.00 used at the closing to Hayward Hite. However, she never saw the money again. There was no doubt that the Browders had that much and more in cash as they had received approximately $15,000.00 from the sale of their house and other goods in Illinois and had other money saved.

Hayward Hite testified that he received no money from Arlander, but purchased the land with cash of his own that he kept around his appliance store in Michie, Tennessee. He testified that he kept thousands of dollars hidden in the store. However his daughter, who counted the $8,000.00 (in hundred dollar bills), testified that he came into the store with a bunch of money and she did not see where it came from, although he said he had gotten it out of his hidden cash fund. He further testified that he advised the sellers of the land that he was purchasing the land and that Arlander was just acting as his agent in negotiations with the Blanton heirs as Hite didn't have time to fool with it.

However, Mrs. Howard, the spokeswoman for the heirs and the person who handled the negotiations and has nothing to gain or lose from these proceedings, testified that Arlander Browder had at one time offered $8,000.00 for the land and she had agreed to accept it, but that one of the other heirs later received an offer of $8,500.00 and therefore refused to sell to Browder. She testified Browder was quite upset and accused her of "backing out" of an agreement. When the $8,500.00 offer fell through, she was ashamed to ask Browder if he would still give $8,000.00 for the land, so she called Hayward Hite to ask him to ask Browder. She further testified that she offered the land to Hayward Hite for $8,000.00 but he said he did not want it. Hayward agreed to contact Arlander Brow-

der to ascertain whether Browder was still interested. Browder later contacted Mrs. Howard and advised her that he would give $8,000.00 if she would not "back out" of the deal again. Mrs. Howard stated that Mr. Browder had told her that at the closing Hayward would hand them the money and take title but that they were selling to Browder.

 As may be seen this case turns primarily on the credibility of witnesses. This is not a case of each party attempting to do his or her best in recalling what took place or what was said. Such cases are not really "credibility of witnesses" cases, but are cases where the evidence preponderates that one event as opposed to another is more likely to have occurred, assuming everyone is telling the truth. In the instant case, someone is simply not telling the truth and the case turns on that point. When the trier of fact and the one who must judge the veracity of the witnesses finds that one witness is not telling the truth, a court of review which cannot view the witness and observe his or her conduct on the stand ought not to reverse that finding absent "clear, concrete and convincing evidence to the contrary". *Tennessee Valley Kaolin Corp. v. Perry* (1974 Tenn.App., W.S.) 526 S.W.2d 488, 490.

It is evident from the findings of the Court that the Chancellor did not believe Hayward Hite's version of the events and we find nothing of a concrete nature in this record, other than the disputed deed, which would warrant our reversal of that finding.

Therefore all issues raised on appeal by Hayward Hite are found against him and we do not address the issue raised by Mrs. Browder but leave her content with the judgment below.

The judgment and decree below is affirmed with interest on the judgment at 8 percent since date of rendition below.

Costs of appeal are adjudged against Hayward and Elsie Hite and sureties.

Done at Jackson in the two hundred and fourth year of our Independence and in the one hundred and eighty-fifth year of our Statehood.

SUMMERS and EWELL, JJ., concur.