852 F.2d 1287
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bill CLIFTON, Plaintiff-Appellee,
v.
GUSTO RECORDS, INC., Defendant-Appellant.
 No. 86-6177.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr. and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant-appellant, Gusto Records, Inc., appeals from the magistrate's award of damages for failure to pay artist's royalties to plaintiff-appellee Bill Clifton, a songwriter and performer. Gusto assigns error to the following determinations made by the district court and the magistrate[1]:
 
 
 2
 1) that Clifton's claim is not barred by the statute of limitations,
 
 
 3
 2) that plaintiff's Exhibit 4 is admissible evidence as an exception to the hearsay rule, and
 
 
 4
 3) that the evidence supports the magistrate's determination of damages.
 
 
 5
 We affirm the district court's conclusion that the plaintiff's action is not time barred, but reverse the magistrate's evidentiary ruling and the verdict on damages, and remand for a new trial on damages alone.
 
 I.
 
 6
 The plaintiff-appellee, Bill Clifton, a songwriter and country music performer, brought this action for an accounting, damages, and injunctive relief for the unauthorized use of songs performed by him and recorded on master tape recordings[2] leased originally to defendant Starday Recording and Publishing Company (Starday),[3] and currently possessed by defendant-appellant Gusto Records, Inc. (Gusto). Specifically, Clifton sought the return of the masters and payment of past and future artist royalties[4] for the use of his recorded performances. Pursuant to 28 U.S.C. Sec. 636(c)(1), the case was tried to a United States Magistrate and Gusto was found to owe Clifton artist royalties and was ordered to return the masters and pay future artist royalties for the use of any of Clifton's performances.
 
 
 7
 In the 1950's, Clifton leased several masters of his performances to Starday. The identity of the song titles involved in this case is undisputed. The leases gave Starday exclusive use of certain masters for a specific time and in return, Starday was to pay Clifton artist royalties for any record that was produced from the masters and sold. The leases expired in 1972, 1973 and 1974.
 
 
 8
 In 1970 and 1971, Clifton contacted Starday through letters to its president in an attempt to retrieve his masters. Starday provided Clifton with copies of some of the master recordings but not all of them. Further attempts netted him a few more masters and copies of others. Clifton then took up residence in England for several years. Although he was aware that Starday still retained several of his masters, he was not aware until 1979 that Starday was continuing to offer for sale records and albums made from the masters. By that time, Starday was no longer a legal entity. However, the trade name "Starday" had been purchased by Gusto and is still used by it today.
 
 
 9
 Gusto acquired the Starday trade name in the same manner it acquired the masters which are the subject of this litigation. The masters and the Starday trade name were purchased by Tennessee Recording & Publishing Company from Starday. Then, in 1975, Gusto acquired the masters and the trade name from Tennessee Recording.
 
 
 10
 In 1979, after Clifton returned from England, he discovered, as a result of a television ad, that Gusto was selling his records. In March of 1985, Clifton sent a letter to Gusto requesting royalties on the leased masters, but received no response. Clifton testifies that he had sent similar letters to Gusto during the previous five or six years and had received no answer.
 
 
 11
 On November 12, 1985, Clifton filed this diversity action. Gusto raised the defense of statute of limitations and made a motion for judgment on the pleadings which was denied. Gusto then filed a motion for summary judgment based on the doctrine of laches and also claimed that it had no obligation to pay Clifton writer royalties. The motion was granted with respect to writer royalties as distinguished from artist's royalties, although it is doubtful that Clifton was ever claiming them. However, Gusto's motion was denied with respect to Clifton's claim for artist royalties.
 
 
 12
 The case was heard by a magistrate on October 8, 1986. The evidence presented consisted of Clifton's testimony and several exhibits offered by Clifton. Gusto produced no witnesses or other evidence.
 
 
 13
 Clifton's Witness List, naming Clifton as the sole witness, and his Exhibit List, were filed at 4:44 p.m. on October 6, 1986. Gusto objected to the late filing of these lists which it did not receive until October 7, 1986, the day before the trial, and sought dismissal of the case. The magistrate considered each objection and determined that the exhibits were admissible. Gusto was given the option of a continuance if it felt that the late filing had prejudiced it, but refused to accept a continuance unless the court ordered Clifton to pay Gusto's expenses. The magistrate declined to do so and the trial began.
 
 
 14
 The proffered exhibits included lists of Gusto's Bill Clifton recordings, Gusto catalogs, various tapes and recordings, and several documents showing the writer royalties paid to Clifton by his publisher Fort Knox Music Company (Exhibit 4). Gusto objected to Exhibit 4, the Fort Knox Music Company's statement of writer's royalties used to calculate the amount of artist royalties owed to Clifton by Gusto. The objection was made on the grounds that the contents of the documents were hearsay. The objection was overruled and the exhibit was admitted pursuant to either Fed.R.Evid. 803(17) or 803(24), the market reports and so-called residual exception to the hearsay rule, respectively. The magistrate found that Gusto had breached an implied contract and awarded Clifton $11,774.00 for artist royalties for the previous six years, the statutory period. Gusto was ordered to return the masters and pay artist royalties on any future sales of records or tapes made from the masters in question.
 
 II.
 A. Statute of Limitations
 
 15
 The magistrate found that an implied contract existed and that Gusto had been unjustly enriched by the use of Clifton's property. This determination required a preliminary finding that the statute of limitations for conversion of property had not run. Gusto claims that the Tennessee statute of limitations for conversion ran either when Clifton failed to obtain the masters from Starday or when he failed to obtain them from Gusto. Gusto contends, therefore, that the masters are its property and that it cannot be unjustly enriched by the use of its own property.
 
 
 16
 The Tennessee statute of limitations for conversion is three years. Tenn.Code Ann. Sec. 28-3-105. The district court found that after the leases had expired, Starday held the masters in bailment or trust for Clifton since the leases were silent with respect to the return of the masters. According to Tennessee law, the statute of limitations does not begin to run against the bailor until the bailee disclaims or denies the bailor's title and holds the property adversely for himself with the bailor's knowledge. Morris v. Lowe, 97 Tenn. 243, 36 S.W. 1098 (1896). Thus, since the district court found that neither Starday nor Gusto had clearly claimed ownership of the masters and refused, on that ground, to return them, Clifton's action for return of the masters was not barred.
 
 
 17
 We think the district court's finding that neither Starday nor Gusto had clearly refused Clifton's demands for the masters was not clearly erroneous, and thus it will not be upset on appeal. Fed.R.Civ.P. 52(a). Starday was ambiguous, to say the least, in its response to Clifton's request, indicating that it could not provide him with the masters at that time but would provide him with copies, which it did. Eventually Starday did return some of the masters. However, Gusto never responded to any of Clifton's requests for the masters. Although Gusto's silence might be construed as an indication that it claimed title to the tapes, there is no evidence of a clear expression to that effect sufficient to trigger the statute of limitations.
 
 
 18
 Since the conversion claim was not time barred, the magistrate's determination that an implied contract existed and that the contract was continuing and severable must be addressed. The magistrate found that Clifton was entitled to artist royalties for the statutory period prior to the filing of the complaint in 1985. The magistrate found that since the tapes were still Clifton's property, an implied contract existed obligating Gusto to pay Clifton artist royalties at the rate contained in the original leases. Upon review we find that the magistrate's disposition of this portion of the case is in accord with Tennessee law. See, e.g., Border v. Hite, 602 S.W.2d 489, 491-92 (Tenn.App.1980).
 
 
 19
 The nature of the obligation to make royalty payments for each use of a master, is severable; therefore, as soon as payment liability accrues and the contract is breached by nonpayment, the limitations period with respect to that payment begins to run. Brockett v. Pipkin, 25 Tenn.App. 1, 149 S.W.2d 478 (1940). Since the statute of limitations for a breach of an implied contract is six years, the magistrate properly determined that Clifton could only recover the royalties due for the six years prior to the filing of this suit. Tenn.Code Ann. Sec. 28-3-109; Powell v. Blake, 161 Tenn. 516, 33 S.W.2d 78 (1930).
 
 B. Admission of Exhibit 4
 
 20
 Although Gusto objected at trial to several of Clifton's exhibits, on appeal it raises only its objection to Exhibit 4. Exhibit 4 is a compendium of statements of writer royalties sent to Clifton from his publisher, Fort Knox Music Company, for the years in question. Each sheet, labeled "Statement of Royalties," is a list of song titles and corresponding entries for a stated accounting period, reciting the market in which recordings of the specific song has been sold (Netherlands, Canada, Domestic, Australia, and so on), the total royalty received by the publisher, and the royalty percentage and dollar amount of each royalty due Clifton. Fort Knox is a publishing company which owns all the publishing interests that once were owned by Tennessee Recording and before that by Starday. Clifton's attorney explained that twice a year Fort Knox submits to Clifton a statement of the writer royalties collected on his behalf. According to Clifton, there was a way to calculate the artist royalties from these statements.
 
 
 21
 The record of trial reveals that the magistrate had some difficulty, as we have, understanding the relevancy of Exhibit 4. At trial, plaintiff's counsel explained the exhibit as follows:
 
 
 22
 The plaintiff, as a composer, is entitled to royalties from his publishers. His publishers receive royalties from record companies, twice a year his publisher submits to him a statement of royalties collected by the publisher on the plaintiff's behalf. These are documents of Fort Knox Music Company to Mr. Bill Clifton indicating, on this very last one, for instance, a royalty income of $194, listing where the royalties came from, mechanical, the Netherlands, mechanical-domestic, Great Britain, Australia, Germany, showing where his royalties come from. As a composer he keeps and maintains these for his own personal tax records and other purposes, they determine what his income is, and what his compositions are doing. It is the only record available to the plaintiff of the sale of his mechanical compositions.
 
 
 23
 Defendant objected that the document was not relevant because it is a list of royalties owed plaintiff as a composer and not as a performing artist. Plaintiff conceded at trial, and concedes now, that the exhibit is a record of songwriter royalties not artist royalties, and that this lawsuit is one for artist royalties not songwriter royalties. The magistrate overruled the defendant's relevancy objection and received Exhibit 4, apparently on the theory that the exhibit had some tendency to prove the amount of artist royalties to which the plaintiff was entitled because he was the only recording artist of most, if not all, of the songs he wrote. Despite the difficulty of the relevancy problem, we examine that issue no further because, on appeal, the defendant challenges the admissibility of Exhibit 4 not on relevancy grounds, but on the theory that the exhibit is inadmissible hearsay. The entire trial record on the defendant's hearsay objection to Exhibit 4, and the magistrate's ruling, is as follows:
 
 
 24
 [DEFENSE COUNSEL]: Your Honor, it has to be admitted for the truth of the statements made therein or [sic ] it's hearsay.
 
 
 25
 THE COURT: He's a participant in the record, it's part of his records. Overrule your objection to that under exceptions 17 and 24 to the Federal Rules of Evidence, Exceptions to Hearsay Rule. Let's go on to the next one.
 
 
 26
 We are satisfied that the magistrate erred. Exhibit 4 was not admissible, on this record, under either "exception 17 [or] 24 to the Federal Rules of Evidence ..." or upon any other basis.
 
 Federal Rule of Evidence 803(17) states:
 
 27
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 (17) Market reports, commercial publications. Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations.
 
 
 31
 Plainly Exhibit 4 is not within that rule. The exhibit is, at most, a private communication, a statement of account, from the plaintiff's publisher to the plaintiff reporting the specific royalty amounts to which the plaintiff was entitled for the "accounting period" described, for musical compositions written by the plaintiff and then recorded, mechanically reproduced, and sold in various world markets. It is an accounting of sums due upon a contract between the plaintiff as composer and Fort Knox Music Company as his publisher. It is not information in the nature of market quotations, tabulations, lists, directories and the like, "generally used and relied upon by the public or by persons in particular occupations," and no effort was made by the plaintiff to prove at trial that it is. Indeed, plaintiff's counsel never suggested at trial that the exhibit was admissible under 803(17).
 
 
 32
 Nor was the exhibit admissible under Fed.R.Evid. 803(24), which provides:
 
 
 33
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 
 
 34
 * * *
 
 
 35
 * * *
 
 
 36
 (24) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
 
 
 37
 The so-called "residual" exception is to be employed sparingly and only in cases in which the other exceptions to the hearsay rule do not provide grounds for the admissibility of a proffered statement because of the unique and unusual character of the evidence in question. Zenith Radio Corp. v. Matsushita Electric Indus. Co., 505 F.Supp. 1190, 1236 (E.D.Pa.1980). Fed.R.Evid. 803(24) is not a basis to admit hearsay when the proponent of the evidence has failed to comply with the foundation requirements of other exceptions to the hearsay rule under which the proffered statement might have been admitted, had the conditions precedent for their application been observed. Indeed, Rule 803(24) lays down a number of conditions for the admissibility of hearsay statements which comprise a formidable barrier to admissibility. The proposed statement must, among other requirements in the rule, "not [be] specifically covered by any of the [other] exceptions, but [have] equivalent circumstantial guarantees of trustworthiness." Exhibit 4 does not meet this requirement.
 
 
 38
 The exhibit might have been admitted, assuming its authenticity, as a business record under Fed.R.Evid. 803(6). In fact, when arguing for the admissibility of the exhibit, plaintiff's counsel described the document as a part of plaintiff's "business records." Similarly, when overruling the defendant's hearsay objection and admitting the exhibit "under exception 17 and 24 of the Federal Rules of Evidence," the magistrate described the exhibit as "part of [plaintiff's] records." Although Exhibit 4 was obviously offered as a part of plaintiff's "business records," no effort whatever was made to authenticate the document or to prove the foundation requirements for its admissibility as a business record under Rule 803(6). The rule provides:
 
 
 39
 Records of regularly conducted activity. A memorandum, report, record, or date compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, every kind, whether or not conducted for profit.
 
 
 40
 Not only was no effort made to prove when the exhibit was made, from whom the information it contains was obtained, whether the information was kept in the course of a regularly conducted business activity, or whether it was a regular practice of the Fort Knox Music Company to make such documents, but no indication was given that plaintiff's counsel was even aware of such foundation requirements.
 
 
 41
 Hearsay may not be admitted under Fed.R.Evid. 803(24) simply because a proponent of a hearsay statement is unable or unwilling to comply with the requisite foundation requirements for the admissibility of the document under another Rule 803 exception. Indeed, Fed.R.Evid. 803(24) expressly provides that a statement is not admissible under that exception unless it is "not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness ..." Here, it is manifest that the document is, as both the plaintiff and the court observed, a business record and thus it was "specifically covered" by one of the other exceptions. Moreover, as defendant's counsel cogently, if rhetorically, asks in his brief on appeal:
 
 
 42
 If the circumstantial guarantees of a business record's trustworthiness are not present in the case at bar because there is no proof about the preparation of the Fort Knox statement, how can the circumstantial guarantees be equivalent to those set forth in Rule 803(6)?
 
 
 43
 We conclude that it cannot, and that Exhibit 4 is not admissible under 803(17) or 803(24) of the Federal Rules of Evidence.
 
 
 44
 Since the whole of the plaintiff's evidence on damages was derived from calculations made from figures appearing in Exhibit 4, it cannot be said that the magistrate's evidentiary ruling admitting the exhibit was harmless.
 
 III.
 
 45
 Accordingly, we affirm the district court's determination that the action was not time-barred and the magistrate's finding that defendant is liable to plaintiff for unpaid royalties on the master tapes identified in the magistrate's Memorandum and Order, but we reverse the magistrate's damage award. Since counsel for the plaintiff may have been induced, by the magistrate's sudden and rather cryptic ruling erroneously admitting Exhibit 4, to forego qualifying the exhibit under one of the other exceptions to the hearsay rule, particularly Fed.R.Evid. 803(6), and because there is considerable evidence in the record suggesting that the defendant may have been unjustly enriched by the failure to pay royalties to which the plaintiff is entitled, we VACATE the damage award and REMAND the case for a new trial on damages only.
 
 
 
 [1]
 The district court ruled on Gusto's motion for judgment on the pleadings based on Gusto's assertion that Clifton's claim was time barred. Thereafter, the case was referred to and heard by the magistrate pursuant to 28 U.S.C. Sec. 636(c)(1)
 
 
 [2]
 A "master" refers to the "master tape" of an artist's performance from which that performance can be transferred to records and/or cassette tapes. The significance of the master is its quality--copies will not be of equivalent quality
 
 
 [3]
 Although Starday was a defendant below, it apparently is no longer a legal entity and thus did not appear or incur any liability in the proceedings below
 
 
 [4]
 "Artist royalties" are paid to the performing artist by the recording company that sells and collects for the mechanical reproduction of the record. It is important to distinguish them from "writer royalties" which are paid to the songwriter by the publishing company holding a copyright on each composition recorded and sold regardless of who the artist is