IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS APRIL 19, 2005

# IN RE: CONSERVATORSHIP OF LAJUANA YVETTE BROWN DELISA PROVOST v. ALTON BROWN AND RON NANCE, CONSERVATORS

**Direct Appeal from the Probate Court for Shelby County**
**No. B-31256     Donn Southern, Judge**

---

**No. W2004-02825-COA-R3-CV - Filed August 5, 2005**

---

This appeal arises out of a petition filed by the conservators requesting the imposition of a constructive trust on assets received by the appellant after the decedent's death. After issuing a temporary restraining order, testimony was taken and the trial court determined that the decedent intended for all funds received by the appellant upon decedent's death to be held in trust for decedent's daughter, the ward. The trial court imposed a constructive trust on these assets, ordered that the assets be paid over to the conservator of the ward's estate, and determined that the appellant was an unsuitable trustee for the funds. The trial court further ordered that the appellant would bear the costs of the proceedings but the conservators were responsible for their attorney's fees. This appeal followed. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Melanie E. Taylor, Memphis, TN, for Appellant

Randell K. Brooks, Memphis, TN, for Appellees

**OPINION**

**Facts and Procedural History**

LaJuana Yvette Brown (d.o.b. 2/23/1969) ("Child") has a mental disability and primarily lived with her mother, Charlie Mae Brown ("Mother" or "Decedent") until Mother died on April 2, 1998. Alton Brown ("Father"), Child's father, and Mother divorced on May 25, 1982. After Mother died, Delisa Provost ("Provost" or "Appellant"), Mother's sister, filed a petition to appoint her the

conservator for Child. Father answered and counter-petitioned arguing that he should be appointed the conservator for Child. A guardian ad litem was appointed and submitted a report to the trial court; additionally, an affidavit of Child's physician was submitted to the trial court stating that Child was unable to manage her personal and financial affairs. After a hearing on both petitions, the trial court determined that Child is disabled and appointed Father conservator of Child's person and Ron Nance ("Nance" or, collectively with Father, "Appellees"), a disinterested person, conservator of Child's estate and finances. Thereafter, on March 17, 1999, the Appellees filed a petition for the imposition of a constructive trust on funds received by Provost as a result of Mother's death. After a hearing on the matter, the trial court, in a memorandum opinion, made the following findings:

> Charlie Mae Brown ("Decedent") died intestate on April 2, 1998. She had one daughter, LaJuana Yvette Brown ("LaJuana"), who is a mentally retarded child. An order was entered on September 10, 1998, appointing Alton Brown ("Brown"), natural father of LaJuana, as Conservator of the Person of LaJuana Yvette Brown, and Ron Nance ("Nance") as Conservator of the Estate of LaJuana Yvette Brown ("the Conservators").

> Decedent was diagnosed with cancer in 1991 and, as a result, began to make provisions for her daughter. It is uncontested that the Decedent believed that her sister, Delisa Provost ("Provost"), would be the caretaker of LaJuana after her death. Believing that Provost would be the legal guardian of LaJuana, Decedent made the following financial provisions: (1) She named Provost as beneficiary on one life insurance policy totaling $125,000; (2) She named Provost as beneficiary in trust for LaJuana Brown on another life insurance policy amounting to $23,750; (3) She added Provost's name as a POD beneficiary to a bank account totaling $12,000; (4) She named Provost and LaJuana as co-beneficiaries of her retirement plan totaling $97,620 ($48,810 each).

> On March 17, 1999, the Conservators filed a petition requesting that this Court impose a constructive trust on the monies received by Delisa Provost as a result of the death of Charlie Mae Brown. The Conservators assert that Provost was the designated beneficiary of these accounts only because Decedent believed that Provost would hold the monies in trust for LaJuana.

> On that same day, the Conservators also filed a petition for this Court to order Provost to return all the Decedent's personal property to the Estate. Provost, along with Decedent's other family members, had removed the Decedent's property from her home, and had divided it up amongst themselves. The Conservator of the Person of LaJuana did receive some, but not all, of the Decedent's property to be used for the benefit of LaJuana. The Conservators assert that all property of the Decedent's Estate should be used for the benefit of LaJuana and that such property, or, in the alternative, the reasonable value of such property, should be returned to the Estate.

. . . .

In addressing the burden of proof required for the imposition of a constructive trust, Provost asserts that the Conservators have not met the necessary "clear, cogent, and convincing" standard. The proof offered by the Conservators, however, consists of admissions made by Provost indicating that she knew the monies were to be used for the benefit of LaJuana, and that she had, in fact, promised the Decedent that she would use the monies as requested.

The record in this case establishes that the Decedent and Provost enjoyed a close relationship. The Decedent even believed that Provost would be the one to care for LaJuana, her only daughter, after her death. The record further establishes that the Decedent was preparing for her death and wanted to ensure that her daughter would be cared for the remainder of her life. In making those preparations, the Decedent told Provost that she was arranging her finances so that Provost would have the necessary funds in trust to care for LaJuana. Provost herself testified to the terms of the oral trust. Thus, upon review of the record, the clear, cogent and convincing evidence reveals that the Decedent named Provost as the legal beneficiary of her life insurance policies, retirement account and bank account, but that Decedent imposed an oral trust upon the proceeds by instructing Provost to hold those funds as trustee for LaJuana Brown. The Court, however, finds that Provost is no longer considered a suitable trustee for these funds, due to the following facts:

1. The failure of Provost to properly account for the assets she has already received as a result of the death of Charlie Mae Brown;
2. The failure of Provost to turn over even the $23,750 expressly held by her in trust for LaJuana Brown;
3. The failure of Provost to cooperate with this Court in a full and open manner;
4. The fact that, to date, Provost has apparently not found any circumstance in which any of the assets of the Decedent's estate should be made available for the support, maintenance or well-being of LaJuana;
5. A disinterested person has been appointed as Conservator for the Estate of LaJuana Brown;
6. Provost has a conflict of interest due to her strong negative feelings against Brown, the father and Conservator of the Person of LaJuana, and her fear that Brown might benefit from the proceeds of the Decedent's estate. Provost has a further conflict of interest because of her strongly-held belief that the assets of the Decedent's estate should come to her, her parents and her siblings upon the death of LaJuana rather than to Brown; and
7. Provost resides in California whereas LaJuana resides with her father in Tennessee.

After issuing its memorandum opinion, the trial court ordered Provost to relinquish all assets she received as a result of Decedent's death to Nance, as conservator of Child's estate. Provost now files an appeal to this Court,[1] presenting the following issues, as we perceive them, for our review:

I.      The trial court erred when it determined that a constructive trust existed and that Appellant should not be the trustee of the funds left in trust for Child; or, in the alternative,

II.     The trial court erred when it ordered Appellant to relinquish the funds from the life insurance policies, bank accounts, and retirement accounts because the plain language of the policies designate her the beneficiary.

For the following reasons, we affirm the decision of the trial court.

**Standard of Review**

When a trial court sits without a jury in a civil action, we review its findings of fact *de novo* upon the record, affording its findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d) (2005). However, we review a trial court's conclusions of law *de novo* affording the trial court's conclusions no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

Further, the Appellees had the burden of proving, by clear and convincing evidence, the existence of a constructive trust based on parol evidence. *Browder v. Hite*, 602 S.W.2d 489, 493 (Tenn. Ct. App. 1980); *see also Story v. Lanier*, ___ S.W.3d ___, No. W2003-02194-COA-R3-CV, 2004 Tenn. App. LEXIS 761, at *47-48 (Tenn. Ct. App. Nov. 17, 2004). This Court has previously discussed the requirements of this standard of evidence:

> The "clear and convincing evidence" standard defies precise definition. *Majors v. Smith*, 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). While it is more exacting than the preponderance of the evidence standard, *Santosky v. Kramer*, 455 U.S. at 766, 102 S. Ct. at 1401; *Rentenbach Eng'g Co. v. General Realty Ltd.*, 707 S.W.2d 524, 527 (Tenn. Ct. App. 1985), it does not require such certainty as the beyond a reasonable doubt standard. *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. Ct. App. 1992); *State v. Groves*, 735 S.W.2d 843, 846 (Tenn. Crim. App. 1987).

---

[1]    Provost previously filed an appeal to this Court after the trial court issued its order requiring Provost to relinquish all assets she received as a result of Decedent's death to Nance. However, we dismissed this appeal because the order Provost appealed from was not a final judgment because it reserved the issue of attorney's fees and court costs. After dismissing this appeal, the Appellees filed a petition requesting court costs and attorney's fees. Subsequently, the trial court entered an order denying the Appellees' request for attorney's fees but ordering Appellant to pay court costs. The trial court also approved an award of fees for Appellees, apparently as conservators for Child. After these proceedings, Appellant brought the instant appeal.

Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established. *In re Estate of Armstrong*, 859 S.W.2d 323, 328 (Tenn. Ct. App. 1993); *Brandon v. Wright*, 838 S.W.2d at 536; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. Ct. App. 1985).

*O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

## Law and Analysis

Appellant's arguments center around the contention that the trial court erred when it determined a constructive trust existed for the life insurance proceeds, retirement and bank accounts, and that Appellant should not be trustee of such trust.

Tennessee has imposed constructive trusts in four types of cases. They are: 1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; 2) where the title to property is obtained by fraud, duress or other inequitable means; 3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and 4) where a person acquires property with notice that another is entitled to its benefits.

*Roach v. Renfro*, 989 S.W.2d 335, 341 (Tenn. Ct. App. 1998) (quoting *Intersparex Leddin KG v. Al-Haddad*, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992)); *see also Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994) (citing Gibson's Suits in Chancery § 383 (7th ed. 1988); *Browder*, 602 S.W.2d at 492). Further, with respect to constructive trusts, this Court has stated as follows:

A constructive trust cannot be imposed against a party who receives property in good faith and without notice of an adverse claim. *Continental Grain Co. v. First National Bank of Memphis*, 162 F. Supp. 814, 833 (W.D. Tenn. 1958). A constructive trust may only be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in good conscience retain. *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. App. 1980). *See also Sanders v. Forcum-Lannom, Inc.*, 225 Tenn. 637, 475 S.W.2d 172, 174 (Tenn. 1972).

*Intersparex Leddin KG*, 852 S.W.2d at 249. Additionally, as noted above, the Appellees had the burden of proving, by clear and convincing evidence, the existence of a constructive trust based on parol evidence. *Browder*, 602 S.W.2d at 493; *see also Story*, ___ S.W.3d ___, 2004 Tenn. App. LEXIS 761, at *47-48.

Finally, we note that this Court has upheld the existence of oral trusts for life insurance proceeds. *Cook v. Cook*, 559 S.W.2d 329 (Tenn. Ct. App. 1977) (holding that the proceeds of a life insurance policy, for which the decedent's brother was named the beneficiary, was intended to be held in a trust to pay the settlor's debts, establish a farming operation for settlor's stepson, and utilize the remainder for the settlor's son, rather than for the benefit of the settlor's brother under the facts of the case); *see also Thatcher by Van Story v. Wyatt*, No. 02A01-9605-CH-00114, 1997 Tenn. App. LEXIS 332 (Tenn. Ct. App. May 15, 1997) (holding that the proceeds of a life insurance policy, naming the defendant as the beneficiary, were intended to be held in trust, under the facts and circumstances of the case, for the benefit of the decedent's child with the plaintiff and defendant as co-trustees; the Court further modified the trust by naming the plaintiff the sole trustee).

The most significant fact for this Court on appeal is that the record lacks a transcript of the proceedings or a statement of the evidence. In her notice that no transcript or statement of the evidence would be filed with this Court, Appellant states that this Court only has issues of law before it. We disagree. As noted previously, this Court has upheld the existence of trusts for life insurance proceeds even though the policy itself makes no mention of a trust. We see no reason why this should differ for bank accounts or retirement accounts. The existence of an oral trust is dependent upon the facts and circumstances of each case, and the Appellees held the burden of proving the trust's existence by clear and convincing evidence. In this case, the question of whether an oral trust exists depends upon the trial court's findings of fact with regard to the understanding between the parties and decedent before decedent died as to how these various assets, for which Appellant was named beneficiary, were to be treated. Additionally, the terms of an oral trust are also dependent upon the facts and circumstances of each case. In discerning the terms of the oral trust, the trial court noted the importance of Appellant's own testimony which, like all other testimony in this case, this Court does not have the benefit of examining. Therefore, though Appellant questions the conclusions of the trial court, those conclusions are dependent upon the facts in evidence before the trial court.

As stated above, when a trial court decides a case without a jury, its finding of fact are presumed to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d) (2005). Further, Appellees held the burden, by clear and convincing evidence, to prove a constructive trust based on parol evidence. *Browder*, 602 S.W.2d at 493; *see also Story*, ___ S.W.3d ___, 2004 Tenn. App. LEXIS 761, at *47-48. Because we cannot review the facts *de novo* without an appellate record containing the facts, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's findings of fact and affirm the judgment of the trial court. *Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 864-65 (Tenn. Ct. App. 2000) (citing *Coakley v. Daniels*, 840 S.W.2d 367, 370 (Tenn. Ct. App. 1992); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 653 (Tenn. Ct. App. 1987)); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992) (citing *McDonald v. Onoh*, 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989); *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn. Ct. App. 1988); *Irvin*, 767 S.W.2d at 653). Therefore, in the absence of a transcript of the proceedings or a statement of the evidence, we must affirm the judgment of the trial court.

**Conclusion**

For the reasons stated above, we affirm the judgment of the trial court. Costs of this appeal are taxed to Appellant, Delisa Provost, and her surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE