**In re SOUTHERN INDUSTRIAL BANKING CORPORATION, d/b/a Daveco, Debtor.**

**BEDS AND MORE, INC., Plaintiff,**

**v.**

**Irwin DEUTSCHER, Trustee for Southern Industrial Banking Corporation, Defendant.**

**Bankruptcy No. 3–83–00372. Adv. No. 3–83–0485.**

United States Bankruptcy Court, E.D. Tennessee.

Feb. 13, 1984.

Annette E. Winston, Knoxville, Tenn., for plaintiff.

Frantz, McConnell & Seymour, Robert L. Kahn, Knoxville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Plaintiff seeks rescission of its prepetition discount sale to the debtor of certain chattel paper. Alternatively, plaintiff demands payment in full of the amount of the check it accepted from the debtor in consideration of the transfer.

The facts have been stipulated by the parties. At all times material herein plaintiff Beds and More, Inc., a Tennessee corporation, was in the business of selling furniture at retail. On or about February 5, 1983, plaintiff entered into five (5) separate retail installment contracts with certain customers. The total face value of these five contracts is $4,801.88. Each customer

granted to plaintiff a security interest in the furniture items purchased. Thus, the installment contracts including each customer's security agreement constitute chattel paper.[1]

On March 4, 1983, plaintiff delivered the five installment contracts to Southern Industrial Banking Corporation (SIBC), whose agent agreed to purchase the chattel paper at a discount. On the date of delivery SIBC issued its check in the amount of $3,815.00 to plaintiff. The SIBC check was drawn against the account of "Southern Industrial Banking Corporation, Sales Division." Since the SIBC check represented payment in full for the discount sale, no security agreement was executed by SIBC to secure payment of the purchase price of the chattel paper.

Plaintiff presented the SIBC check for payment at the City & County Bank of Knox County. After that bank refused payment, on or about March 8, 1983, plaintiff presented the check to SIBC. When SIBC refused to honor its own check plaintiff orally requested return of the five installment contracts. SIBC also refused to return these contracts to plaintiff.

On March 10, 1983, SIBC filed its chapter 11 petition. Plaintiff's complaint, filed on May 23, 1983, requests either a rescission of its discount sale to SIBC or payment in full of the debtor's $3,815.00 check.

Plaintiff contends that there was a failure of consideration for its transfer of the chattel paper and that it timely reclaimed the five (5) installment contracts, pursuant to Tenn.Code Ann. § 47–2–702(2) (1979).[2] Plaintiff further contends that it is a "gross injustice" to permit the debtor to retain both the chattel paper and the consideration for the purchase thereof. The trustee in bankruptcy asserts that plaintiff's complaint fails to state a claim upon which relief may be granted.[3] According to the trustee, plaintiff is simply a general unsecured creditor of the debtor whose only redress is to file a proof of claim as an unsecured creditor.

The precise question before the court is whether a seller of chattel paper, holding a dishonored check for the purchase thereof, who makes a prepetition demand for return of the chattel paper when the buyer declines to honor its own check, is entitled to either the chattel paper or payment in full as against the trustee's rights. Plaintiff approaches the issue as one of reclamation rights, contending it timely demanded return of the chattel paper, pursuant to Tenn. Code Ann. § 47–2–702 (1979), and perfected its interest vis-a-vis the trustee. However, it is questionable whether Chapter 2 of Ti-

---

1. *Chattel paper.* A writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods. In many instances chattel paper will consist of a negotiable instrument coupled with a security agreement. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper. Black's Law Dictionary 215 (5th ed. 1979).

2. This subsection of Tenn.Code Ann. § 47–2–702 (1979) (Seller's remedies on discovery of buyer's insolvency) provides in part:
    Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten (10) days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three (3) months before delivery the ten (10) day limitation does not apply.

Chapter 2 of Title 47 of the Tennessee Code applies to transactions in goods, but it does not apply to any transaction intended to operate as a security transaction only. Tenn.Code Ann. § 47–2–102 (1979). The term "goods" means "all things ... movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities ... and things in action." Tenn.Code Ann. § 47–2–105(1) (1979). The court, however, finds it unnecessary to determine either whether the chattel paper in question is within this statutory definition of "goods" or if Chapter 2 of Title 47 of the Tennessee Code is applicable.

3. Plaintiff originally named the debtor as the defendant in this adversary proceeding, but plaintiff served both the trustee and the debtor's attorney with a copy of the complaint. The complaint was dismissed as to the debtor on September 16, 1983.

tle 47 of the Tennessee Code is applicable.[4] Further, Bankruptcy Code § 546(c) provides in relevant part:

> (c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—
>
> (1) such a seller may not reclaim any such goods unless such seller demands *in writing* reclamation of such goods before ten days after receipt of such goods by the debtor . . . . (Emphasis added.)

11 U.S.C.A. § 546(c) (1979).

Admittedly, plaintiff did not make written demand upon SIBC. It is, however, also questionable whether this statute is apposite because: (1) the record does not establish that discount sales of chattel paper are a part of the seller's ordinary course of business; (2) "goods" within the meaning of that term as found in § 546(c) may not include chattel paper. But, because the court does not believe that Code § 546(c) controls, it is not necessary to address these questions.

Section 541(d) of Title 11 of the United States Code recites in material part:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

Although SIBC unquestionably had legal title, it owned no equitable interest in the chattel paper at issue on March 10, 1983, the date of its bankruptcy petition. Plaintiff had an immediate right of recourse against SIBC upon the presentment and dishonor of the debtor's check on March 8, 1983. Tenn.Code Ann. § 47–3–507 (1979).[5] This right to recourse included a right to demand return of the chattel paper delivered to the debtor on March 4, 1983. SIBC unjustifiably declined to return the chattel paper to the plaintiff, only two days prior to the filing of its voluntary bankruptcy petition. Under these circumstances SIBC did not own any equitable interest in the chattel paper when its petition was filed. Hence, upon surrender of debtor's dishonored check, plaintiff is entitled to the return to it of the chattel paper and all monies paid by plaintiff's customers to the debtor pursuant to the terms of the five installment contracts.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

---

4. See note 2, *supra.*

5. Subsection (2) of this statute enacts: "Subject to any necessary notice of dishonor and protest, the holder has upon dishonor an immediate right of recourse against the drawers and endorsers."