In re UNION SECURITY MORTGAGE
COMPANY, Debtor.

Larry STEWART, Trustee for Union
Security Mortgage Company,
Plaintiff–Appellant,

v.

EAST TENNESSEE TITLE INSURANCE
AGENCY, INC., Defendant–Appellee.

No. 93–5755.

United States Court of Appeals,
Sixth Circuit.

Argued April 28, 1994.

Decided June 1, 1994.

John L. Chambers (argued and briefed), Stokes & Bartholomew, Nashville, TN, for plaintiff-appellant.

Paul E. Jennings (argued and briefed), Paul E. Jennings Law Offices, Nashville, TN, for defendant-appellee.

Before: GUY and NELSON, Circuit Judges; and QUIST, District Judge.*

PER CURIAM.

Larry Stewart, plaintiff and trustee for Union Security Mortgage Company ("debtor"), appeals the district court's reversal of the bankruptcy court's order that voided the assignment of a note and deed of trust to defendant, East Tennessee Title Insurance Agency, Inc. ("ETT"). Because we conclude that debtor had an equitable interest in the note and deed of trust at the time it assigned them to ETT, we agree with the bankruptcy court that the assignment was a voidable preference under 11 U.S.C. § 547. We therefore reverse the decision of the district court.

## I.

In 1989, debtor agreed to loan Philip Walker $72,867 to enable him to purchase a tract of residential real estate from Erica Collins.

---

* Honorable Gordon J. Quist, United States District Court for the Western District of Michigan, sitting by designation.

Debtor arranged to have ETT simultaneously close the loan transaction and the sale of Collins' home to Walker. This closing was scheduled for December 29, 1989. On that date, Walker and Collins met with the president of ETT, Myron Ely. The closing did not take place as planned, however, because, contrary to expectations, debtor had not yet provided ETT with a $72,867 check to fund the sale of Collins' home. Ely nonetheless had Collins execute the warranty deed for her property, and had Walker make both a note in the principal amount of $72,867, payable to the order of Union Security, and a deed of trust securing that note. ETT held these documents in anticipation of its receipt of the funding check from debtor.

On January 3, 1990, debtor delivered to ETT a $72,867 check payable to the order of ETT. This check was uncertified and was drawn on debtor's bank account. ETT deposited this check in its bank account and then used its own funds to pay Collins the purchase price of the home. ETT also delivered the warranty deed to Walker, and the note and deed of trust to debtor.

ETT learned on or about January 9, 1990, that debtor's bank had dishonored the $72,867 check. On January 11, 1990, ETT sued debtor in Tennessee state court, seeking a writ of possession for the note and deed of trust. ETT's action was terminated later that day, however, when debtor assigned the note and deed of trust to ETT ("the assignment"). Since that time, ETT has held the note and received monthly payments from Walker.

Roughly one month later, in February 1990, debtor was the subject of an involuntary petition filed under Chapter 11 of the Bankruptcy Code. Trustee Stewart thereafter commenced an action against ETT, in which he sought to avoid the assignment as a preference under 11 U.S.C. § 547. Stewart moved for summary judgment in the § 547 action. The bankruptcy court granted this motion and issued an order that voided the assignment. ETT appealed to the district court, which reversed on the basis of its

holding that the assignment was not a preference. This appeal followed.

## II.

■ On appeal following district court review, we review a bankruptcy court decision for clear error as to findings of fact, and *de novo* as to conclusions of law. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1447 (6th Cir.1994). This appeal presents only questions of law, because the facts are undisputed.

■ Section 547 allows a trustee in bankruptcy to "avoid any transfer of an interest of the debtor in property" if five conditions are met: (1) the transfer was "to or for the benefit of a creditor"; (2) the transfer was "for or on account of an antecedent debt"; (3) the transfer was "made while the debtor was insolvent"; (4) the transfer was made within 90 days of the filing of the debtor's bankruptcy petition;[1] and (5) the transfer enables the creditor to receive more than he would have received if the transfer had not been made and the debtor's assets had been liquidated under Chapter 7 of the Code. 11 U.S.C. § 547(b)(1)–(5). The parties do not dispute that the assignment transferred an interest of the debtor in property, that the assignment met the requirements of § 547(b)(1)–(4), and that none of the § 547(c) exceptions apply. The nub of this appeal accordingly is whether the assignment allowed ETT to receive more than it would have received if the assignment had not been made and debtor's assets had been liquidated under Chapter 7.

The bankruptcy court answered this question in the affirmative, but the district court disagreed. Property rights, the district court correctly noted, generally are defined by state law. *See Barnhill v. Johnson,*— U.S. —, —, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). Tennessee law allows for the imposition of a constructive trust upon property "obtained by fraud, duress, or other inequitable means[.]" *Browder v. Hite,* 602 S.W.2d 489, 493 (Tenn.Ct.App.1980). Ten-

---

1. The preference period is extended to one year if the transfer is made to an "insider." *See* 11 U.S.C. § 547(b)(4)(B).

nessee law also provides that the basis of an action "for fraud and deceit is still the misrepresentation of the defendant, whether intentional or negligent, and some damage flowing from a justifiable reliance on the misrepresentation." *Holt v. American Progressive Life Ins.*, 731 S.W.2d 923, 927 (Tenn. Ct.App.1987). The district court determined that debtor's delivery of the dishonored check was "clearly fraudulent" under this standard, because that delivery "misrepresented to [ETT] that [debtor] had sufficient funds in its bank account to cover its subsequently dishonored check[.]" (App. at 219.) On the basis of this determination, the district court declared that debtor held the note and deed of trust in constructive trust for ETT. In the district court's view, since ETT thus held equitable title to these documents all along, the assignment merely transferred to ETT "bare legal title" to the documents. The district court therefore concluded that the assignment was not a preference because the assignment did not improve ETT's position over what it would have been if the assignment had not taken place and debtor had filed for bankruptcy under Chapter 7.

■ The district court erred, however, when it determined that debtor's delivery of the $72,867 check was "clearly fraudulent." The Supreme Court has flatly stated that "a check is not a factual assertion at all" and thus does not "make any representation as to the state of [the drawer's] bank balance." *Williams v. United States*, 458 U.S. 279, 284–85, 102 S.Ct. 3088, 3091–92, 73 L.Ed.2d 767 (1982). Since a check does not make any representation, it cannot make any *mis*representation. *See Val–Land Farms v. Third Nat'l Bank*, 937 F.2d 1110, 1114 (6th Cir. 1991) ("Obviously, there must be [a] representation of some sort before there can be a

*mis*representation.") (emphasis in original). The mere delivery of debtor's check thus did not misrepresent the state of debtor's bank balance to ETT. Because there accordingly was no basis for any finding that debtor obtained the note and deed of trust by fraudulent or similarly inequitable means, there likewise was no basis for the imposition of a constructive trust upon those documents. The assignment therefore transferred to ETT both equitable and legal title to the documents, and allowed ETT to receive more than it would have received if the assignment had not taken place and debtor had filed for bankruptcy under Chapter 7. In short, then, the assignment was a voidable preference under § 547.[2]

■ ETT presents a number of arguments that the district court had no need to address. The first such argument is founded on ETT's novel conception of the exchange that took place between debtor and ETT on January 3, 1990. ETT maintains that debtor and ETT had an agreement which provided that debtor would give ETT $72,867 as consideration for ETT's transfer of the note and deed of trust to debtor. ETT notes that, under Tenn.Code Ann. § 47–3–802(b), one who "takes an instrument for an underlying obligation" can maintain an action "on either the instrument or the obligation" if the instrument is dishonored. Tennessee law also provides for rescission of a contract if a "failure of consideration ... defeats the very object of the contract or concerns a matter of such grave importance that the contract would not have been executed had that default been contemplated." *James Cable Partners, L.P. v. City of Jamestown*, 818 S.W.2d 338, 343 (Tenn.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). Thus, according to

---

**2.** We also note our recent holding that, "[b]ecause a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment 'impressing' the [subject] property or assets with a constructive trust." *XL/Datacomp*, 16 F.3d at 1451. *See also Browder v. Hite*, 602 S.W.2d 489, 493 (Tenn.Ct.App.1980) ("a constructive trust arises not by any intention but rather *by [an] act of a Court of equity* to overcome the procuring of legal title in violation

of some duty") (emphasis supplied). At the time of the assignment, of course, a constructive trust had not been imposed on the note and deed of trust. Thus, without regard to whether debtor acted fraudulently, the assignment in fact transferred to ETT both legal and equitable title to those documents, and hence improved ETT's position over what it otherwise would have been as a Chapter 7 creditor. Even if the district court were correct as to whether debtor fraudulently obtained the documents, then, the assignment nevertheless was a preference under § 547.

ETT, when debtor's check was dishonored, ETT's right of recourse on the underlying obligation included a right to rescind the "agreement" pursuant to which the check was presented. Rescission "involves ... placing the parties in their prior status." *Mills v. Brown,* 568 S.W.2d 100, 102 (Tenn. 1978). Citing *Beds and More, Inc. v. Deutscher (In Re Southern Indus. Banking Corp.),* 36 B.R. 1008 (Bankr.E.D.Tenn.1984), ETT thus argues that its right of rescission gave it equitable title to the note and deed of trust, and that the assignment accordingly did not cause it to receive more than it otherwise would have received in a Chapter 7 liquidation of debtor's assets.

■ ETT's argument rests upon a flawed conception of debtor's arrangement with ETT. Debtor plainly did not agree to give ETT $72,867 as consideration for ETT's "transfer" of the note and deed of trust. That debtor did not so agree is revealed by the fact that ETT never had any ownership rights in those documents, which were made out to debtor and held by ETT merely as an escrow agent. Instead, the arrangement between debtor and ETT appears to have been a more pedestrian one: in exchange for a relatively small fee, ETT agreed to make appropriate dispersals of funds and documents upon the satisfaction of certain conditions. Debtor's delivery of the $72,867 check to ETT was one of those conditions, just as Collins' delivery of the warranty deed to ETT was one of those conditions. Debtor's delivery of the check no more discharged an obligation owed by debtor to ETT than Collins' delivery of the warranty deed discharged an obligation owed by her to ETT. These deliveries were merely incident to the performance of ETT's escrow agent function. Since no obligation owed by debtor to ETT

underlay debtor's delivery of the check to ETT, there was no "underlying obligation" upon which ETT could maintain an action when the check was dishonored. In the absence of such an obligation, there could be neither a "failure of consideration" nor an agreement that could be rescinded. Because the remedy of rescission accordingly was unavailable to it, ETT had no right to return to the status quo as it was before the documents-for-check "exchange." [3] ETT's argument that a right of rescission gave it equitable title to the note and deed of trust therefore is without merit.[4]

■ ETT next argues that the assignment did not improve its position because it had a right to "reclaim" the documents under Tenn.Code Ann. § 47–2–702(2). That subsection provides:

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten (10) days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three (3) months before delivery the ten (10) day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

ETT's argument is meritless, without regard to whether the documents were "goods" as defined by Tenn.Code Ann. § 47–2–105. A "seller" is "a person who sells or contracts to sell goods." Tenn.Code Ann. § 47–2–103(1)(d). One "sells" goods when one passes title to those goods to a buyer for a price. *See* Tenn.Code Ann. § 47–2–106(1) ("A 'sale' consists in the passing of title from the seller to the buyer for a price[.]") ETT

---

3. ETT's only recourse in fact was to sue debtor as the drawer of a dishonored instrument. *See* Tenn.Code Ann. 47–3–413(2) ("The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder or to any endorser who takes it up.") Debtor apparently recognized its liability as drawer of the dishonored check, and so it settled ETT's claim by means of the assignment. In doing so, however, it singled out ETT for preferential treatment, to the detriment of its other creditors.

4. We note that ETT's argument would be unavailing even if ETT had some rescission-based right to return to the status quo as it was before the documents-for-check "exchange." Unlike the plaintiff in *Beds and More,* ETT had no right to the stream of payments described in the note it held in escrow, because the note was made out to debtor, not ETT. The assignment gave ETT a right to that stream of payments, and thus did more for ETT than a right of rescission could have done.

was not a "seller" of the documents because it did not have title to them prior to the assignment. The remedies set forth in section 47–2–702 therefore were not available to ETT.

■ ETT bases its next argument on the fact that debtor routinely sold its notes on the secondary market. ETT argues that debtor did not have any equitable interest in notes such as the Walker note, because debtor was merely a conduit between the maker of the note and the purchaser of the note on the secondary market. It is true that, if a person has sold certain mortgages in the secondary market, but has retained the mortgage notes and related documents merely to facilitate the servicing of those mortgages, the person holds no equitable interest in them. *See Collier on Bankruptcy* ¶ 541.24 (15th ed.1993). But it does not follow that a person who routinely sells mortgages has no equitable interest in mortgages that he has not yet sold on the secondary market. The contrary obviously is true. At the time of the assignment, debtor had not sold the Walker note on the secondary market.[5] ETT's assertion that debtor lacked any equitable interest in the note accordingly is without merit.

■ Finally, ETT argues that the assignment should not be seen as a preference because it did not result in a depletion of debtor's estate. ETT asserts that debtor "paid not[h]ing for the note transferred, received nothing and had nothing under state law." This argument is without merit because, absent the assignment, Walker's monthly payments would be credited to debtor's estate, not ETT's bank account.[6]

We therefore **REVERSE** the district court's reversal of the bankruptcy court's grant of summary judgment for the trustee.

---

5. Debtor had assigned the note to "Union Planters Bank" by the time of the assignment, but it is clear enough from the record that Union Planters Bank is affiliated with debtor. Debtor had made arrangements to sell the Walker note to Sears Mortgage Corporation, but that sale had not yet taken place at the time of the assignment.

6. Absent the assignment, the note would have been "property of the estate." 11 U.S.C. § 541(a)(1). Walker's payments thus would have been "proceeds ... or profits of or from property of the estate," and such proceeds or profits themselves are "property of the estate." 11 U.S.C. § 541(a)(6).